UNITED STATES of America, Plaintiff–Appellee,

v.

Tiffany Sherrell STANLEY, Charles Reynaldo Cameron, Defendants–Appellants.

No. 93–8049.

United States Court of Appeals, Eleventh Circuit.

June 30, 1994.

---

Robert L. Wadkins, Columbus, GA, for Stanley.

Richard C. Hagler, Columbus, GA, for Cameron.

G.F. Peterman, III, Asst. U.S. Atty., Macon, GA, for appellee.

Before BIRCH, Circuit Judge, RONEY and CLARK, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

Defendants-appellants Charles Reynaldo Cameron and Tiffany Sherrell Stanley were convicted along with Ronald Calvin Powers of conspiracy to possess with intent to distribute and with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Powers' convictions and sentence were affirmed by another panel of this court.[1] This appeal involves only Cameron and Stanley. We affirm Cameron's convictions and sentence, but we vacate Stanley's convictions, as we find that the evidence is insufficient to sustain her convictions.

## FACTS

On December 12, 1991, police arrested Timothy Wayne Murray in Columbus, Georgia, on cocaine trafficking charges. Murray agreed to cooperate with police by assisting them in arresting his suppliers in Atlanta, Georgia.[2] At the direction of the police, Murray made a telephone call from the police department in Columbus to defendant Cameron in Atlanta. Murray telephoned Cameron's pager number and left the telephone number of the telephone line used by the police to set up undercover drug deals.[3] At approximately 8:40 p.m. on December 12th, Cameron returned Murray's telephone call, and the police tape-recorded the ensuing conversation between Cameron and Murray.[4] During the course of this conversation, Cameron and Murray arranged a drug deal: Cameron agreed to drive down to Columbus that evening with three and one-half ounces of cocaine base, for which Murray agreed to

pay $3,600.00. Cameron agreed to telephone Murray when he arrived at the Hardee's Restaurant in Columbus.[5]

Several hours later, Cameron telephoned Murray from the Hardee's Restaurant in Columbus.[6] An undercover police officer drove Murray to the Hardee's Restaurant in an old pick-up truck. When they arrived at the Hardee's, Murray saw Cameron across the street at the gas station, standing beside his car pumping gas. As he approached Cameron's car, Murray saw two passengers in the car, a black female in the front passenger's seat and a black male, identified as Powers, in the back seat.[7] Murray asked Cameron, "where the dope was," and Powers responded, "You need to talk to me."[8] Powers then got out of the car and he and Murray walked across the street to the Hardee's Restaurant, discussing the drug deal as they walked. Powers and Murray then walked back across the street to the gas station and got into the back seat of Cameron's car. Cameron sat in the driver's seat. The woman was still in the front passenger's seat.[9]

Cameron drove the car out of the gas station and across the street toward the back of the Hardee's Restaurant, ostensibly so Murray could obtain money for the drug deal.[10] As Cameron drove across the street and around toward the back of the restaurant, police officers moved in the make the arrests.[11] The undercover police officer who had driven Murray to the scene stopped Cameron's car by ramming it with the pick-up truck.[12] Another officer observed Powers throw an automatic pistol out of the car.[13] After apprehending the occupants of Cameron's car, the police officers searched the car and discovered cocaine base under the dashboard. The police arrested Cameron, Pow-

**1.** *United States v. Powers*, 5 F.3d 1500 (11th Cir.1993) (table).

**2.** R2–61–63.

**3.** 42–63–64; R2–139–140.

**4.** R2–64–66; R2–140–143; Government's Exh. 6.

**5.** Government's Exh. 6 at 5, 11–14.

**6.** *Id.* at 16–17.

**7.** R2–172–175.

**8.** R2–1786.

**9.** R2–177–181.

**10.** R2–181; R2–205–206.

**11.** R–70; R–220.

**12.** R2–71; R2–181–182; R2–220.

**13.** R2–71–73.

ers, and the woman in the front seat, identified as Stanley.[14] The arrests were made at approximately 2:00 a.m.[15] In a post-arrest statement, Cameron admitted ownership of the cocaine base discovered hidden under the dashboard.[16]

## DISCUSSION

### A. The Convictions

#### 1. Charles Reynaldo Cameron

■ Cameron contends that the evidence is insufficient to sustain his convictions because the government failed to prove that the substance found in his car on the night of his arrest was cocaine base. On the night of Cameron's arrest, the police officers weighed the substance found under the dashboard of Cameron's car on scales in the police department; the substance weighed 105.6 grams.[17] The state crime laboratory subsequently determined that the substance was cocaine base and that it weighed 88 grams.[18] Cameron relies on this discrepancy in weight to support his argument that the government failed to establish that the cocaine base identified at trial was the same substance discovered in his car on the night of his arrest. Having carefully reviewed the record, we determine that this argument is without merit. First, the government's witnesses established a chain of custody between the substance seized on the night of Cameron's arrest and the cocaine base identified at trial.[19] Second, the government's witnesses provided a plausible explanation for the weight discrepancy: the scales in the police department had been confiscated during a drug deal and were not properly maintained, and the police officers did not remove the plastic bags in which the cocaine base was packaged before weighing it, as the state crime lab did.[20] Accordingly, we conclude that the evidence was sufficient to sustain Cameron's convictions.

Cameron also contends that the district court made three allegedly improper comments on the evidence during the charges to the jury. First, Cameron argues that, in instructing the jury that Cameron's incriminating statement should not be considered as evidence against the other defendants, the district court judge improperly stated his own recollection of the evidence regarding this statement. We have carefully reviewed the district court's instructions on this point,[21] and we find that the district court was careful to avoid either expressing or intimating any opinion on the evidence regarding Cameron's statement; rather, the district court simply reminded the jury that there was evidence of such a statement so that the instruction would make sense to the jury. Second, Cameron argues that the district court improperly instructed the jury, over defendants' objections, that the jury should not draw any adverse inferences from defendants' failure to testify.[22] It is well established that the giving of such an instruction over the defendant's objection does not violate the Constitution.[23] Finally, Cameron argues that the district court improperly charged the jury that the government was under no obligation to prove that defendants possessed any specific amount of cocaine.[24]

14. R2–71–74; R2–101.

15. R2–68.

16. R2–214–215.

17. R2–95.

18. R2–231–232.

19. R2–74–77; R2–95; R2–222–224; R2–227–233.

20. R2–132; R2–233. The probation officer and the district court calculated Cameron's sentencing guidelines range based upon his possession of 88 grams of crack cocaine, *not* 105 grams. Cameron's Presentence Investigation Report at ¶ 20; 1st Supp. R1–5.

21. R2–346–347.

22. R2–349–350.

23. *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978).

24. The district court charged the jury, in pertinent part:

"Nowhere in the indictment does the grand jury charge any specific amount of cocaine.... So the prosecution in this case was not under any obligation to prove any specific amount of cocaine. It was under an obligation to prove they found a substantial amount of cocaine, a measurable amount of cocaine.... [T]he prosecution did not have the burden of proving any specific amount. All it had to do was prove that the

The indictment in this case did not charge any specific amount of cocaine. Thus, the government was not required to prove the exact quantity of drugs involved.[25] We find no error in the district court's charge. Accordingly, Cameron's challenges to his convictions are without merit.

### 2. Tiffany Sherrell Stanley

 Stanley argues that the evidence is insufficient to support her convictions because there is absolutely no evidence that she either willingly participated in or had any knowledge of the illegal drug activity. The government offered very little testimony regarding Stanley. Two police officers who were present at the time of defendants' arrests testified that Stanley was in the front passenger's seat of Cameron's car and that she was wearing a blue jean jacket.[26] One of the officers testified that he recovered some one dollar bills from Stanley but that these bills were *not* part of the payoff money that the police had provided to Murray.[27] Finally, Murray testified that he knew nothing about Stanley:

> [PROSECUTOR]: And where was Ms. Stanley, the lady?
>
> [MURRAY]: I guess—I guess—she was in the front. It was a girl up in the front seat, but I don't know her.
>
> [PROSECUTOR]: You don't know what her name was?
>
> [MURRAY]: I don't even know what she looked like.[28]

The government did not offer any evidence of Stanley's demeanor on the night of her arrest. The testimony related above is the totality of the evidence directly related to Stanley.

The government relies on several pieces of circumstantial evidence to support Stanley's

convictions. First, the government relies on a conversation between Cameron and "an unidentified female, whose voice may be heard, though not understood, on the tape" of the telephone conversation between Cameron and Murray.[29] The government did not offer any testimony at trial regarding this "unidentified female" voice. The tape recording of the telephone conversation between Murray and Cameron, which commenced at approximately 8:40 p.m. on December 12th, was played to the jury,[30] and a transcript of this conversation was admitted as an exhibit.[31] Two lines of this 17–page transcript read: "UF: '(Inaudible).' "[32] This is apparently the "unidentified female" voice to which the government refers. The conversation in which this unidentified voice is heard occurred more than five hours before Stanley was arrested in the front seat of Cameron's car. The government did not offer any evidence, other than Stanley's gender, to connect her with the unidentified, inaudible, female voice on the tape.

Second, the government relies on Murray's testimony regarding his initial encounter with Cameron and Powers at the gas station. Murray testified, in pertinent part:

> [PROSECUTOR]: Do you recall how many people were in the car?
>
> [MURRAY]: Three.
>
> [PROSECUTOR]: And can you describe them by sex and race?
>
> [MURRAY]: Two black males and one female.
>
> . . . . .
>
> [PROSECUTOR]: Where was [Cameron] located in the vehicle?
>
> [MURRAY]: He was out pumping gas in the car.

cocaine was of a substantial, measurable amount. That's what the burden was. They had to do that beyond a reasonable doubt." R2–366–367.

25. *See United States v. Cross*, 916 F.2d 622, 623 (11th Cir.1990), *cert. denied*, 499 U.S. 929, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991).

26. R2–72; R2–119; R2–211–213.

27. R2–130.

28. R2–181.

29. Brief of Appellee at 20.

30. R2–147–163.

31. Government's Exh. 6.

32. *Id.* at 9.

[PROSECUTOR]: All right. Where were the other two located?

[MURRAY]: Sitting in the car.

. . . . .

[PROSECUTOR]: What conversation did you have when you came up to that vehicle?

[MURRAY]: I asked them where the dope was.

[PROSECUTOR]: All right. And to whom did you direct that question?

[MURRAY]: [Cameron].

[PROSECUTOR]: Could everyone hear you? Were they within ear shot when you asked that question?

[MURRAY]: Yes, sir.

[PROSECUTOR]: What response did you get to that question?

[MURRAY]: The guy in the back seat [Powers] said, "talk to me...." [33]

According to Murray, Powers then got out of the car and he and Murray walked away from the car to discuss the drug deal.[34] The government contends that Stanley is implicated because Murray asked "where the dope was" in her presence. Murray did not testify as to whether Stanley actually heard his question or whether she reacted to it. Later in his testimony, Murray said that he did not know Stanley and did not "even know what she looked like." [35]

Finally, the government relies on Cameron's reference to a "posse" in his telephone conversation with Murray. Near the beginning of this conversation, Cameron made reference to a "posse that's coming...." [36] Later in the conversation, the following exchange took place:

[MURRAY]: Well, you, you ... ain't no way you can come all the way [to Columbus] wit you posse.

[CAMERON]: With who?

[MURRAY]: With you posse, you know. So you ...

[CAMERON]: No, specially not in [Cameron's car, a convertible].[37]

The government argues that these statements "established a conspiracy and the fact that the persons who would be accompanying Cameron were members of the conspiracy." [38] The statements do indicate that Cameron may have generally made drug trades accompanied by a "posse," but they also indicate that he did not intend to bring the "posse" on the trip to Columbus. Other than the transcript of the telephone conversation between Cameron and Murray, the government did not offer any other evidence regarding Cameron's "posse."

Although we must take the facts and reasonable inferences therefrom in the light most favorable to the government, the government must demonstrate that it produced sufficient evidence at trial to allow a jury to find guilt beyond a reasonable doubt of each element of the offenses of conviction.[39] Stanley was convicted of both conspiring to possess with intent to distribute crack cocaine and with the substantive offense of possessing with intent to distribute crack cocaine. To prove the conspiracy, the government was required to show an agreement by two or more persons to commit the substantive offense, Stanley's knowledge of the agreement, and her voluntary joinder in the enterprise.[40] To prove the substantive offense, the government was required to show that Stanley knowingly possessed the cocaine and that she intended to distribute it.[41]

The evidence shows that Stanley was the passenger in a car that was involved in a drug transaction and in which crack cocaine was hidden. We have reviewed cases in this

---

**33.** R2–175–176.

**34.** R2–178.

**35.** R2–181.

**36.** Government's Exh. 6 at 2.

**37.** *Id.* at 3–4.

**38.** Brief of Appellee's at 22.

**39.** *United States v. Pollock,* 926 F.2d 1044, 1049 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

**40.** *Id.*

**41.** *Id.* at 1050.

and other circuits addressing the sufficiency of the evidence against those present in automobiles in which drugs are hidden. Although the facts of these cases vary widely, there is consistency among the holdings: all of the circuits, including this one, require something more than mere presence in the car to sustain a conviction. The Fifth Circuit has stated the rule as follows:

> To prove knowledge when the contraband is hidden ... the Fifth Circuit requires that in addition to mere presence in the vehicle, or control over it, there be circumstances evidencing a consciousness of guilt on the part of the defendant.[42]

Thus, the Fifth Circuit reversed the conviction of a defendant who had been paid by a third party to drive a rental car with two kilograms of cocaine hidden under the dashboard from Miami to New Orleans.[43] Concluding that the evidence was insufficient to establish that the defendant had knowledge of the cocaine, the Fifth Circuit noted that the defendant "fell asleep during the first search [of the rental car], conduct normally not attributed to a person potentially facing arrest."[44] Likewise, other circuits, in the absence of evidence of guilty knowledge, have reversed the convictions of defendants who entered the United States in a car involved in a drug conspiracy,[45] of a passenger in a car carrying 17 kilograms of cocaine hidden in a spare tire well,[46] of a passenger who remained in the car while the driver exited and conducted a drug transaction,[47] of the driver of a car carrying 200 pounds of cocaine in four closed containers,[48] and of the passenger in a car that crossed the Mexican border in the early morning hours carrying 13 bricks of marijuana hidden behind the back seat.[49] On the other hand, courts will affirm convictions when the defendant's presence in the car is combined with other evidence of guilt. For example, the Fifth Circuit has affirmed convictions when the defen-

---

**42.** *United States v. Gonzalez–Lira,* 936 F.2d 184, 192 (5th Cir.1991) (citations omitted).

**43.** *United States v. Sacerio,* 952 F.2d 860 (5th Cir.1992).

**44.** *Id.* at 864. *See also United States v. Gordon,* 700 F.2d 215, 217 (5th Cir.1983) (reversing the conviction of the passenger in a truck carrying over 60 pounds of marijuana, the court said: "We are unable to find any evidence, beyond [the defendant's] 'mere presence' in the truck, to indicate that he had maintained control over the contraband, had any intention of participating in the distribution of the contraband, or had any knowledge of it whatsoever.").

**45.** *United States v. Bautista–Avila,* 6 F.3d 1360, 1363 (9th Cir.1993) ("Admittedly, [defendants'] conduct is consistent with that of people tangentially involved in a drug conspiracy. However, their behavior is also consistent with that of people who are unwittingly associating with individuals involved in a drug conspiracy. As we pointed out earlier 'mere casual association with conspiring people is not enough.' ").

**46.** *United States v. Pena,* 983 F.2d 71, 72 (6th Cir.1993) ("A generalized belief or suspicion that something illegal is going on is not sufficient for a rational jury to find that a mere passenger in an automobile is aiding and abetting the delivery of cocaine.").

**47.** *United States v. King,* 936 F.2d 477, 481 (10th Cir.) ("Neither [of the witnesses] testified that

[the defendant] participated in the transaction in any manner or that he shared in the proceeds...."), *cert. denied,* —— U.S. ——, 112 S.Ct. 647, 116 L.Ed.2d 644 (1991).

**48.** *United States v. Pace,* 922 F.2d 451, 453 (8th Cir.1990) ("The evidence proves beyond a reasonable doubt that [the defendant] was present at the ongoing crime of transporting this cocaine. He even helped, however, unwittingly, commit that crime. The evidence does not prove, however, that [the defendant] knew that he was helping carry cocaine across the country.").

**49.** *United States v. Ferg,* 504 F.2d 914 (5th Cir.1974) ("Beyond the admission by [the defendant] that he was a traveling companion of one guilty of illegal possession of marijuana, the government failed to establish that [the defendant] in any way violated 21 U.S.C. § 841(a)(1).") As a former Fifth Circuit case, *Ferg* is binding upon this court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1290 (11th Cir.1981) (*en banc*). The sufficiency of the evidence standard applied in *Ferg,* however, was later modified by *United States v. Bell,* 678 F.2d 547 (Former 5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Thus, "the analysis supplied by pre-*Bell* cases is not controlling." *United States v. Cruz–Valdez,* 773 F.2d 1541, 1545 (11th Cir.1985) (*en banc*), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). Nevertheless, we find the reasoning and outcome of *Ferg* persuasive.

dant's presence in or control over the vehicle in which drugs are hidden is combined with evidence that the defendant was nervous, made conflicting statements to authorities, or related implausible stories to authorities.[50] Likewise, when there is evidence of presence in or control over the vehicle in which drugs are hidden, this circuit has affirmed convictions of a defendant who made untrue statements and took steps to avoid police surveillance,[51] of a defendant who had made other brief trips along the same drug route,[52] and of a defendant who had sought assistance in hiding the cocaine in the car.[53]

Applying this case law to the facts of this case, we must determine whether Stanley's presence in Cameron's car is combined with other "circumstances evidencing a consciousness of guilt." We conclude that the evidence is insufficient to indicate a "consciousness of guilt" on Stanley's part. The police officers testified that Stanley was in the passenger's seat of Cameron's car wearing a blue jean jacket. There is no evidence regarding her demeanor and no evidence that she made untrue, contradictory, or otherwise incriminating statements. Murray, who set up the drug transaction, did not know Stanley. Although Murray asked about the "dope" in Stanley's presence, there is no evidence that she heard his statement or, if she did, whether she reacted to it. Before discussing the drug deal, Powers and Murray moved away from the car, such that Stanley could not hear the ensuing discussion. There is no evidence that the crack cocaine hidden under the dashboard was within Stanley's reach.[54] Cameron admitted ownership of the cocaine without in any way implicating Stanley.[55] There is also no evidence to tie Stanley to the unidentified, inaudible, female voice on the tape recording of Murray's conversation with Cameron. Finally, Cameron's reference during that conversation to a "posse" cannot implicate Stanley because Cameron indicated that he did not intend to bring the "posse" on the trip to Columbus.[56] Having carefully reviewed the record, we find no evidence of Stanley's guilty knowledge. Accordingly, we conclude that the evidence is insufficient to sustain Stanley's convictions.

**50.** *See United States v. Shabazz,* 993 F.2d 431 (5th Cir.1993) (inconsistent statements, nervousness, and anxiousness regarding search); *United States v. Pineda–Ortuno,* 952 F.2d 98, 102 (5th Cir.) (nervousness, conflicting statements, and implausible stories), *cert. denied,* —— U.S. ——, 112 S.Ct. 1990, 118 L.Ed.2d 587, 118 L.Ed.2d 587 (1992); *United States v. Diaz–Carreon,* 915 F.2d 951 (5th Cir.1990) (nervousness, conflicting statements, and implausible story); *United States v. Anchondo–Sandoval,* 910 F.2d 1234, 1237 (5th Cir.1990) (contradictory statements).

**51.** *United States v. Pollock,* 926 F.2d 1044, 1050 (11th Cir.) (affirming conviction of driver of car who took steps to conceal that car was rented, made untrue statements regarding his occupation and his destination, and took steps to avoid police surveillance), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

**52.** *United States v. Stuckey,* 917 F.2d 1537, 1538 (11th Cir.1990) ("Given the other tangible evidence the police seized from appellant and [her companion] on that occasion, which indicated that appellant and [her companion] had made several brief trips from Atlanta to Miami and back to Atlanta during the preceding seven months, a reasonable jury could readily find appellant guilty as charged in the indictment."), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991).

**53.** *United States v. Jones,* 913 F.2d 1552, 1560 (11th Cir.1990) (witness testified that the defendant sought assistance in removing the inside panel of the car door to hid the cocaine).

**54.** The government failed to offer evidence to establish under which side of the dashboard the cocaine was hidden. One officer testified that he "believe[d] it was the passenger side," R2–101, but he was not the officer who discovered the cocaine. R2–95. The officer who discovered the cocaine did not testify.

**55.** *See Gordon,* 700 F.2d at 217 (overturning conviction of passenger in vehicle carrying marijuana where "the driver of the car made no reference to the defendant's participation in any smuggling activity").

**56.** Citing Cameron's reference to a "posse," the government argues that this case is similar to *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). *Bourjaily* differs from this case in at least two significant respects. First, *Bourjaily* was before the Supreme Court on an evidentiary issue only; thus, the Supreme Court applied only a preponderance of the evidence standard. Second, the co-conspirator's statements at issue in *Bourjaily* were much less ambiguous than Cameron's statements regarding the "posse."

## B. *The Sentences* [57]

■ Cameron was sentenced to 360 months in prison and five years supervised release. He challenges his sentence on four grounds. First, he challenges the district court's application of U.S.S.G. § 3A1.2(b), which provides for a three-level increase in the defendant's offense level if, "during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." In applying this guideline, the district court relied on Cameron's conduct in allegedly driving his car in such a manner as to endanger the lives of police officers who were attempting to arrest him.[58] The government did not present any evidence at Cameron's sentencing hearing. Accordingly, we review the evidence offered at trial to determine whether it supports the district court's application of § 3A1.2(b).

One of the arresting officers testified that Cameron's car "shot across the road"[59] from the gas station toward the Hardee's Restaurant and slid around the corner of the restaurant "at a good rate of speed."[60] Although the police vehicle that pulled up behind Cameron's car did not use its lights or sirens, the police officer who rammed Cameron's car did have the lights flashing in his truck.[61] Murray testified that, as Cameron drove his car across the street from the gas station to the Hardee's Restaurant, the occupants of the car saw an agent with a gun running across the street toward them.[62] Finally, an arresting officer who was standing behind the Hardee's Restaurant testified that the officer who rammed Cameron's car did so "to protect my life as well as [that of a third officer]."[63] We conclude that this evidence was sufficient, although just barely, for the district court to conclude by a preponderance of the evidence that Cameron assaulted one or more officers in a manner creating a substantial risk of serious bodily injury.[64]

■ Second, Cameron challenges the district court's application of U.S.S.G. § 2D1.1(b)(1), which requires a two-level increase in the defendant's sentencing guidelines range if the defendant possessed a dangerous weapon, such as a firearm. Cameron contends that the increase in his case was error because the jury acquitted him of the firearms offenses charged in the indictment. "Acquitted conduct may be considered by a sentencing court because a verdict of acquittal demonstrates a lack of proof sufficient to meet a beyond-a-reasonable-doubt standard—a standard of proof higher than that required for consideration of relevant conduct at sentencing."[65] Here, the district court applied U.S.S.G. § 2D1.1(b)(1) based upon its finding that Powers threw a pistol out of Cameron's car just before defendants' were arrested.[66] This court has held:

> Sentence enhancement for a co-conspirator's firearms possession is proper if three conditions are met: first, the possessor must be charged as a co-conspirator; second, the co-conspirator must be found to

**57.** Because we vacate Stanley's convictions, we need not address her challenges to her sentence.

**58.** Cameron's Presentence Investigation Report at ¶¶ 10 and 23; 1st Supp. R1–5.

**59.** R2–115.

**60.** R2–121.

**61.** R2–116–117. The arresting officers arrived in two pick-up trucks, which were apparently unmarked. R2–103, R2–117. There is no evidence that any of the arresting officers were in uniform.

**62.** R2–186, R2–207.

**63.** R2–220–221.

**64.** *See United States v. Ignancio Munio*, 909 F.2d 436, 439 (11th Cir.1990) (facts underlying a sentence must be established by a preponderance of the evidence), *cert. denied*, 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991).

**65.** *United States v. Averi*, 922 F.2d 765, 766 (11th Cir.1991).

**66.** Cameron's Presentence Investigation Report at ¶¶ 10 and 21; 1st Supp. R1–5.

have been possessing a firearm in furtherance of the conspiracy; and third, the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearms possession.[67]

The evidence presented at trial was sufficient for the district court to conclude by a preponderance of the evidence that these three conditions were met.

■ Third, Cameron challenges the district court's application of U.S.S.G. § 3B1.1(c), which requires a two-level increase in a defendant's sentencing guidelines ranges if the defendant "was an organizer, leader, manager, or supervisor" in a criminal activity. The evidence at trial showed that Cameron negotiated the price of the cocaine that he intended to sell to Murray and made arrangements for the drug transaction. We find that the evidence was sufficient for the district court to find by a preponderance of the evidence that Cameron acted in a managerial capacity in the criminal activity.

■ Finally, Cameron contends that the district court erred in declining to decrease his sentencing guidelines range pursuant to U.S.S.G. § 3E1.1 based on his alleged acceptance of responsibility. Cameron argues that he accepted responsibility because, prior to trial, he was prepared to plead guilty to the drug offenses but did not do so because the government declined to dismiss the firearms charges, for which he was eventually acquitted. Cameron's argument might be persuasive except that, during and after the trial, Cameron took the position that the cocaine base introduced at trial was not the substance seized on the night of his arrest; Cameron alleged that the substance found under the dashboard of his car on the night of his arrest was merely baking powder, not cocaine.[68] We find no error in the district court's decision not to decrease Cameron's guidelines range based on his acceptance of responsibility.

*CONCLUSION*

For the reasons explained above, we VACATE Stanley's convictions, and we AFFIRM Cameron's convictions and sentence.

---

**67.** *United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989).

**68.** *See* Cameron's Presentence Investigation Report at ¶ 15.