[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13138
Non-Argument Calendar
_____

D. C. Docket No. 06-20794-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PITERSON ROSIER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 8, 2008)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Piterson Rosier appeals his convictions for (1) conspiracy to import cocaine,

in violation of 21 U.S.C. § 963; (2) importation of cocaine, in violation of 21 U.S.C. § 952(a); (3) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and (4) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).  On appeal, Rosier challenges the sufficiency of the evidence as to all four charges.  We AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Rosier on four counts of cocaine-related offenses.  Frantz Jacques was charged as a co-conspirator.[1]  At trial, Officer Hector Firpo, a Customs and Border Protection (CBP) employee at Miami International Airport, testified that he had first noticed Rosier during an enforcement examination of Rosier's flight in December 2006.  Officer Firpo explained that he had noticed that Rosier walked "in a rigid manner" and could "not flex[] his shoes very well."  R2 at 26.  Officer Firpo stopped Rosier and asked a few routine questions about Rosier's trip to Haiti.  He testified that, while walking to a secondary inspection site, he had noticed that Rosier was still walking in a very rigid manner, and, during the secondary inspection, he questioned Rosier about his shoes.  Rosier explained that he had bought them in Haiti for $40.  Officer Firpo testified that, during a pat-down search of Rosier, he had asked Rosier to remove

---

[1]Jacques ultimately pled guilty to the conspiracy charge but invoked his Fifth Amendment privilege against self-incrimination and did not testify at Rosier's trial.

his shoes, which weighed more than normal and smelled strongly of glue. He could see glue coming out of the sole from the inside of the shoe, and the shoe would not flex. Officer Firpo extracted powder from under the sole of the shoe, which tested positive for cocaine.

Officer Lester Silva, a CBP employee at Miami International Airport, testified that he had noticed Jacques coming "off the plane in a rigid manner." Id. at 54. Silva elaborated that Jacques did "not bend[] his shoes much" and had "a rigid walk[, l]ifting his knees a little above average." Id. at 55. Officer Silva stopped Jacques at the checkpoint and decided to conduct a secondary examination and pat-down. Officer Silva noticed that Jacques's shoe was significantly heavier than a normal sneaker and that the sole seemed modified. He also indicated that the shoe was rigid and would not bend. Officer Silva extracted a white powdery substance from Jacques's shoe, which tested positive for cocaine.

Pasqual Citere, an employee of Air France, testified that the plane tickets of Rosier and Jacques had been purchased in Port-au-Prince, Haiti, and paid for in cash. Citere confirmed that the two tickets had been purchased consecutively, and that Jacques had made the ticket reservation for himself, Rosier, and two other individuals. Further, Citere testified that: (1) both Jacques and Rosier checked in for the flight at Port-au-Prince within three minutes of each other; (2) the ticket

3

reservations of Rosier and Jacques provided the same contact information; and (3) Jacques, Rosier, and the two other individuals on the reservation checked in for the flight consecutively.

Patricia Burn, a senior forensic chemist for the Drug Enforcement Administration (DEA), testified that the white powder found in Rosier's shoes was cocaine hydrochloride. Burn also testified that the shoes carried roughly a kilogram of 90% pure cocaine. Jill Rene Raezer, a second DEA forensic chemist, testified that Jacques's shoes also contained roughly a kilogram of 95% pure cocaine.

Upon being recalled for additional testimony, Officer Firpo stated that he had recovered two cell phones from Rosier during the pat down-search. Agent Trevor McKenzie, a special agent with Immigration and Customs Enforcement, then testified that although Rosier and Jacques had each denied knowing the other, one of the two cell phones recovered from Rosier at the Miami airport belonged to Jacques. Agent McKenzie also testified that the street value of 1 kilogram of cocaine is approximately $15,000 to $22,000, and that the total of 2 kilograms seized from Rosier and Jacques is an amount generally used for distribution rather than for personal consumption.

At the close of evidence, Rosier moved for judgment of acquittal, which the

4

district court denied. The jury found Rosier guilty of all four counts, and the district court sentenced him to 78 months in prison, to run concurrently as to each count. On appeal, Rosier challenges the sufficiency of evidence as to each count. He specifically argues that (1) because there was no direct evidence showing an agreement to import or distribute cocaine, the government failed to establish that he agreed to participate in the conspiracy; and (2) that the government failed to establish that he knowingly possessed or intended to distribute cocaine.

## II. DISCUSSION

We review challenges to the sufficiency of the evidence de novo. United States v. Miles, 290 F.3d 1341, 1355 (11th Cir. 2002) (per curiam). The evidence is viewed "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." Id. We must affirm unless there is no "reasonable construction of the evidence" under which the jury could have found the defendant guilty beyond a reasonable doubt. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam).

Conspiracy requires proof beyond a reasonable doubt that: (1) "there existed an agreement between two or more persons to [commit the underlying crime]," and (2) "the defendant knowingly and voluntarily participated in that agreement." United States v. Arbane, 446 F.3d 1223, 1228 (11th Cir. 2006). "A conspiracy

5

may be inferred from a concert of action or from a development and collection of circumstances." United States v. Cooper, 873 F.2d 269, 272 (11th Cir. 1989) (per curiam). Participation may be inferred where a defendant takes action to further the conspiracy, and "the defendant's own statements may be used to infer his participation in the conspiracy." Id. We have found that evidence of concerted travel arrangements and identical contact information supports a conviction for conspiracy. Id. at 273-74. Further, evidence that a "defendant [later found to be in possession of drugs] was nervous, made conflicting statements to authorities, or related implausible stories to authorities" may support a conviction for conspiracy. United States v. Stanley, 24 F.3d 1314, 1321 (11th Cir. 1994).

In order to prove that a defendant imported a controlled substance, the government must establish that the defendant knowingly imported a controlled substance into the United States. United States v. Peart, 888 F.2d 101, 104 n.2 (11th Cir. 1989) (per curiam). Proof may be made by direct or circumstantial evidence. United States v. Kelly, 749 F.2d 1541, 1546 (11th Cir. 1985). In order to convict a defendant under 21 U.S.C. § 841(a), the government must prove that he had knowing possession of a controlled substance with intent to distribute it. United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006), cert. denied, 127 S.Ct. 2155 (2007). In order to establish knowing possession, the government

6

may show actual or constructive possession and can prove possession with direct or circumstantial evidence. Id. "Constructive possession exists where the defendant had dominion or control over the drugs or over the premises where the drugs were located." Id. "Possession by one co-conspirator can be imputed to another." Kelly, 749 F.2d at 1548. Further, intent to distribute may be inferred from the large amount of contraband in the defendant's possession. See United States v. Tinoco, 304 F.3d 1088, 1124 (11th Cir. 2002).

The cumulative effect of the circumstantial evidence belies Rosier's contention of insufficiency. As to Rosier's involvement in the conspiracy, the record is clear that, on the same night, both Rosier and Jacques were stopped, searched, and ultimately arrested at the Miami airport after having been discovered wearing shoes in which significant quantities of cocaine had been concealed. The evidence establishes that Rosier and Jacques traveled together. See Cooper, 873 F.2d at 273. Rosier and Jacques's plane tickets were purchased consecutively in Port-au-Prince, Haiti, with cash. Jacques made the reservation for Rosier and left the same contact information on both tickets. The evidence also establishes that Rosier and Jacques checked in to the flight together. Moreover, Rosier carried Jacques's cell phone with him off of the airplane, and both men walked in the same rigid manner because of the same shoe modification. In addition, the cocaine

7

found in Rosier's shoes matched in approximate quality and quantity that found on Jacques. See id. (similarity in drug quality found on defendants constituted evidence of conspiracy). Finally, each man initially denied knowing the other, although it became evident that they were traveling together. See Stanley, 24 F.3d at 1321. For all of these reasons, a reasonable jury could have concluded that there was an agreement between Rosier and Jacques in which Rosier knowingly and voluntarily participated.

The evidence also discredits Rosier's claim of insufficiency regarding the importation and distribution elements of the charges against him. Because Rosier and Jacques were involved in a conspiracy, evidence that Jacques knowingly possessed cocaine can be imputed to Rosier. See Kelly, 749 F.2d at 1548. Additionally, given the evidence that Rosier's shoes smelled strongly of glue, weighed significantly more than normal shoes, and forced him to walk in a rigid manner, a reasonable jury could have concluded that Rosier knew that the shoes had been altered to conceal a controlled substance. Even if that were not the case, possession can be imputed to Rosier because he had dominion and control over the shoes carrying contraband. See United States v. Clark, 732 F.2d 1536, 1540 (11th Cir. 1984) (holding that defendant had constructive possession of narcotics where narcotics found in his truck).

8

Because the evidence also establishes that Rosier purchased the shoes in Haiti and brought them into the United States, a reasonable jury could have concluded that Rosier knowingly imported cocaine into the United States. In addition, the evidence also establishes that Rosier had the requisite intent to distribute necessary under § 841(a). Agent McKenzie testified that the amount of cocaine carried by Rosier and Jacques is not commonly used for personal consumption but rather for distribution. Further, he testified that the street value of two kilograms of cocaine was between $30,000 and $44,000. Thus, a jury reasonably could have found an intent to distribute based on the large amount of cocaine possessed by the defendants. See Tinoco, 304 F.3d at 1124.

### III. CONCLUSION

Rosier appeals his convictions for conspiracy to possess and import, and importing and possessing, cocaine with intent to distribute it. Because Rosier has failed to demonstrate that the evidence relating to any element of the charged offenses was insufficient for a reasonable jury to find him guilty beyond a reasonable doubt, we **AFFIRM** his convictions.