[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15090
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 07, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00077-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LEONARD CARTER, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 7, 2008)**

Before BIRCH, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

James Leonard Carter, Jr., appeals from his convictions for possession with

the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841 (a)(1),

(b)(1)(B)(iii), and possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On appeal, Carter argues that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of these offenses because the testimony of two detectives with the Glades County Sheriff's Office, was contrary to his own testimony, and because the evidence was not sufficient to connect him with the tan duffle bag, where the drugs were found. After careful review, we affirm.

When, as here, a defendant fails to move for a judgment of acquittal after all the evidence has been presented, reversal of the conviction is appropriate only to prevent "a manifest miscarriage of justice." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). Under this standard, the evidence on a key element of the offense must be "so tenuous that a conviction would be shocking." Id. We cannot review jury determinations as to the credibility of witness testimony unless such testimony is "incredible as a matter of law." United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999) (citation omitted). Testimony is incredible as a matter of law only if it is "unbelievable on its face" and relates to "facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (internal quotations, alterations and citation omitted).

The relevant facts are these. At the trial, Michael Pepitone and Steve Harris, Glades County Sheriff's Office detectives, testified that they pulled over a silver Chrysler for violating the Florida "Move Over Act." Detective Pepitone testified that three people were in the Chrysler, and Carter was seated in the middle of the back seat. Both detectives testified that they smelled marijuana coming from the Chrysler. According to Detective Pepitone, after Detective Harris's canine made a positive alert to the car, Pepitone searched the three bags in the back seat -- two were small suitcases, and the third was a tan gym duffle bag to the right of Carter.

Detective Pepitone testified that he found in the tan duffle bag thirteen small pink-colored baggies that contained 5.9 grams of cocaine, a hardcover Bible inscribed to "James and Roquesa," and personal clothing. He also found in the duffle a sneaker box labeled for black Nike Air Jordans that contained a large clear ziploc baggie of a plate, a small measuring spoon, and a razor blade, all with cocaine residue; a pharmaceutical pill bottle of crack cocaine pieces totaling 7.1 grams; another pill bottle with 11 grams of cocaine; a large baggie of marijuana; three pairs of scissors; two digital scales; and another set of plastic bags containing many small bags that displayed an Apple icon, which Detective Pepitone testified are commonly used to package drugs. Detective Harris testified that while Detective Pepitone searched the duffle bag, Harris observed Carter putting his head

3

down "in a negative motion" and shaking his head in a "defeated fashion," and that neither of the other passengers had any physical reaction to the search. Detective Harris also testified that Carter would not claim ownership of the tan duffle bag. Neither the tan duffle bag nor the items inside were analyzed for fingerprints.

Both detectives also testified that they recalled Carter wearing Nike Air Jordans, but could not remember the color of the shoes. Detective Pepitone further testified that neither of the other two passengers were wearing Nike Air Jordans.

Carter testified on his own behalf. Carter admitted that the Bible was his, but denied that the Bible was inside the tan duffle bag, and denied ownership of the tan duffle bag and its contents.[1] According to Carter, Detective Pepitone stated that the drugs belonged to Carter even before he opened the box in the duffle bag, and charged Carter with all of the drugs because Carter was the only person in the car who had gold teeth and for his refusal to stop talking. Carter also testified that the shoes he was wearing when arrested were mostly blue with black trim, and that another passenger in the car also was wearing Nike Air Jordans. After Carter testified, he rested his case and did not move for judgment of acquittal.

---

[1] Roquesa Whiley, Carter's girlfriend, testified that she gave and inscribed to Carter the Bible found in the car. Whiley did not know if the tan duffle bag belonged to Carter, but she never knew Carter to own a tan duffle bag. Whiley never saw Carter carrying a black Nike box.

The government recalled Detectives Pepitone and Harris as rebuttal witnesses. According to Detective Pepitone, the only conversation he had with Carter was at the beginning of the traffic stop when he requested Carter's identification. Both detectives testified that Carter was not talkative.

In order to convict a defendant of possession with intent to distribute, the government must prove beyond a reasonable doubt that the defendant (1) knowingly and intentionally (2) possessed a controlled substance (3) with intent to distribute it. 21 U.S.C. § 841(a)(1); United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). These elements may be proved by circumstantial evidence. Poole, 878 F.2d at 1391-92. "A defendant has actual possession of a substance when he has direct physical control over the contraband." United States v. Edwards, 166 F.3d 1362, 1363 (11th Cir. 1999). Constructive possession exists when a defendant (1) "has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion," or (2) has "ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband was concealed." United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996).

Under these standards, we require some nexus between the defendant and the contraband, and a defendant to have knowledge of the substance's existence to exercise control or dominion over it. Holmes v. Kucynda, 321 F.3d 1069, 1080 (11th Cir. 2003) (42 U.S.C. § 1983 context). Evidence of a "consciousness of guilt," such as nervousness, inconsistent statements or stories, and anxiousness regarding the search, is sufficient for a jury to infer a defendant's knowledge of the controlled substances found in a car. United States v. Stanley, 24 F.3d 1314, 1320-21 & n.50 (11th Cir. 1994). Moreover, to establish possession, the government must show that the defendant was more than merely present in the car which he knew contained contraband. United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998) ("[M]erely sharing a vehicle in which one knows cocaine and a gun are hidden does not amount to possession . . . .").

The intent to distribute may be inferred from the amount of drugs involved. United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005) (citation omitted). Intent to distribute can also be proven circumstantially from, among other things, the quantity of cocaine and existence of implements such as scales commonly used in connection with cocaine distribution. Poole, 878 F.2d at 1392.

Here, a reasonable trier of fact could conclude that the evidence established beyond a reasonable doubt that Carter had knowing possession of the drugs in the

tan duffle bag. There is no dispute that drugs were found in the tan duffle bag. In addition, the jury could reasonably infer knowledge of the drugs through Carter's "consciousness of guilt," Stanley, 24 F.3d at 1320, when Detective Harris observed Carter putting his head down "in a negative motion" and shaking his head in a "defeated fashion," while Detective Pepitone searched the tan duffle bag. Further, Carter exercised dominion and control of the tan duffle bag, as his Bible was in the bag, and he was wearing the same brand of shoe as shown on the shoe box found in the bag.[2] Thus, unlike Leonard, 138 F.3d at 907-09, where this Court held that the jury could not have inferred that Leonard knew the cocaine and gun were in the car or that he ever had ownership, dominion, or control over them, the jury in this case considered much more than Carter's mere guilt by association. Accordingly, the government's evidence was sufficient to support a conclusion that the tan duffle bag and the items inside belonged to Carter.

The jury could also reasonably infer intent to distribute cocaine and crack cocaine from the amount of drugs seized, along with the implements including digital scales, razor blades, a measuring spoon, a plate, and bags displaying an Apple icon, found in the tan duffle bag. Hernandez, 433 F.3d at 1337; United

---

[2] Although Carter testified that his Bible was not in the tan duffle bag and that another passenger was wearing Air Jordans, the testimony of Detectives Pepitone and Harris to the contrary was not "incredible as a matter of law." Chastain, 198 F.3d at 1351. As a result, we cannot review their credibility. Id.

States v. Wilson, 183 F.3d 1291, 1299 (11th Cir. 1999); Poole, 878 F.2d at 1392.

Moreover, in light of the drug distribution-related implements and the amount of drugs -- 16.9 grams of cocaine and 7.1 grams of crack cocaine -- found here, this case is distinguishable from Turner v. United States, 396 U.S. 398, 423 (1970), where the Supreme Court reversed Turner's convictions for possession with intent to distribute cocaine where the defendant only had "14.68 grams of a cocaine and sugar mixture."[3]    Thus, the evidence here was sufficient to prove intent to distribute both cocaine and crack cocaine.

In short, Carter, who failed to move for a judgment of acquittal at the close of all of the evidence, has not demonstrated that the evidence relating to a key element of either charged offense was so tenuous that his conviction would be considered shocking.   Bender, 290 F.3d at 1284.   For these reasons, we affirm Carter's convictions.

**AFFIRMED.**

---

[3] Indeed, in United States v. Robinson, 870 F.2d 612, 613 (11th Cir. 1989), this Court held that crack cocaine represented a more potent form of the drug and therefore, a jury could infer intent to distribute from a lesser quantity than it would for cocaine offenses.