[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11976
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 29, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-00345-CR-WS-M-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD ERIC WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(January 29, 2010)

Before EDMONDSON, CARNES and FAY, Circuit Judges.

PER CURIAM:

Richard Eric Williams was found guilty by a jury and was convicted of

possession with intent to distribute MDMA (Ecstasy) in violation of 21 U.S.C. § 841(a)(1). Williams challenges his conviction, contending that the evidence was insufficient to support it. Williams argues that government presented speculative, circumstantial evidence at trial, which failed to prove that he knowingly possessed 1,448 Ecstasy pills that sheriff's deputies found in the center console of the vehicle he was driving.

"We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict." United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006). "[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." United States v. Hernandez, 433 F.3d 1328, 1334 (11th Cir. 2005) (quotation marks omitted). "It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." Thompson, 473 F.3d at 1142.

To support a conviction under 21 U.S.C. § 841(a)(1) for possession of drugs with intent to distribute, the government must prove: (1) knowledge of possession; (2) possession of a controlled substance; and (3) intent to distribute. United States v. Woodard, 531 F.3d 1352, 1360 (11th Cir. 2008). "These elements may be

proven by circumstantial evidence." Id. A defendant's mere presence in a vehicle where drugs are hidden is not enough to establish his knowledge. See United States v. Stanley, 24 F.3d 1314, 1319–20 (11th Cir. 1994). A defendant's presence in the vehicle along with other surrounding circumstances evidencing a consciousness of guilt, however, is enough to support an inference of knowledge. United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998); see also Stanley, 24 F.3d at 1320 ("[C]ourts will affirm convictions when the defendant's presence in the car is combined with other evidence of guilt.").

Williams was not merely present in a vehicle where drugs were hidden. At trial the government presented evidence of other surrounding circumstances evidencing Williams' consciousness of guilt. See Leonard, 138 F.3d at 908–09. During a traffic stop for speeding, Williams and his passenger, Sharvest Dumas, told Deputy Tolbert conflicting stories about their trip to Atlanta. Williams told Tolbert, who testified at trial, that he and Dumas had left New Orleans for Atlanta on Saturday night, had stayed in Atlanta two nights, had visited his cousin named Rob, and had been partying at some strip clubs. Dumas, who also testified at trial, told Tolbert that they had left New Orleans on Sunday night, had stayed in Atlanta one day, and had visited a friend named Richard.

The jury also heard testimony that during the stop Tolbert asked Williams

3

about an odor of marijuana that was coming from his vehicle. Williams said that the odor was on his clothes because other people had been smoking marijuana in the clubs that he and Dumas had visited in Atlanta. Tolbert testified that when he started asking Williams about the marijuana, Williams' demeanor changed. He became more nervous; sweat beads formed on his forehead; he was moving and twitching, unable to stand still.

Tolbert asked for consent to search the vehicle and Williams agreed. When Tolbert asked Williams if he would find drugs or large sums of money in the vehicle, Williams said he had about $1,000 in his pocket, and Tolbert found about $1,300 in Williams' back pocket. When Tolbert searched the vehicle, he found marijuana residue in a cup holder and a small bag of marijuana inside of a cup. He saw no suitcases or other luggage. In the center console he found a package wrapped in duct tape and fabric softeners.[1] It contained bags of marijuana and 1,448 Ecstasy pills.[2]

Williams argues that the reasonable inference to be drawn from his nervousness is that he knew a small bag of marijuana was in the vehicle. He asserts that if he had put the package containing the Ecstacy pills in the vehicle, he

---

[1] The government presented expert testimony that fabric softener sheets are used to mask the scent so that drug dogs cannot detect the drugs.

[2] No objections were made to the presentence investigation report, which states that officers found 1,448 Ecstasy pills during the search.

would not have told an officer that he had maintained exclusive possession of the vehicle for two weeks. He also points out that Dumas also had access to the vehicle. Williams argues that a jury could not draw a reasonable inference of guilt from expert testimony that the use of a borrowed car and the lack of any luggage was consistent with drug trafficking because the expert also testified that drug traffickers use "an infinite number of different modes of operation."

The jury heard and assessed the credibility of Dumas' testimony that he had bought the drugs in Atlanta, had put them in the console of the vehicle without Williams' knowledge, and had intended to keep the 1,448 Ecstasy pills for his own personal use. A videotape of the stop, filmed by a camera mounted in Deputy Tolbert's patrol car, was admitted into evidence and viewed by the jury. The jury had an opportunity to consider the plausibility of Williams' statements to law enforcement about the details of his trip to Atlanta, such as the fact that he and his lifelong friend Dumas, whom he knew only as "Scooter," had gone to Atlanta for two days to visit a cousin he knew only as "Robert" and had not stayed anywhere but had "partied" the whole time.

The jury considered evidence that Williams was driving the vehicle when it was stopped, that Williams said the vehicle belonged to his cousin's construction company, and that Williams said he had kept the keys to the vehicle, maintaining

5

sole custody of it for two weeks before the stop. There was enough evidence for a reasonable jury to find that Williams' knowingly possessed the drugs found in the console of the vehicle. See Woodard, 531 F.3d at 1360; Hernandez, 433 F.3d at 1333 (11th Cir. 2005) ("Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed.") (quotation omitted). Furthermore, there was testimony that the 1,448 Ecstasy pills had a street value of about $28,000 and that possession of such a large amount of drugs indicated an intent to distribute. See United States v. Robinson, 870 F.2d 612, 613 (11th Cir. 1989) (holding that a jury could have reasonably inferred intent to distribute based on the defendant's possession of 25.2 grams of crack cocaine).

Viewed in the light most favorable to the verdict, Thompson, 473 F.3d at 1142, the evidence was sufficient for the jury to draw a reasonable inference that Williams knowingly possessed 1,448 Ecstasy pills with the intent to distribute them.

**AFFIRMED.**

6