TJOFLAT, Circuit Judge:
Christopher Wilson and Eric Herndon were convicted in separate trials of charges relating to the trafficking of crack cocaine. They now appeal. Wilson challenges only one of his convictions. We find no infirmity in it and therefore affirm. Herndon challenges both his convictions and his sentences. We affirm his convictions, but set aside the sentences he received for his drug offenses and remand the case for resentencing.
I.
Beginning in January 1995 and continuing until August 1995, officers of the Macon County, Alabama, Sheriff’s Department conducted surveillance on what they suspected to be a “crack house” — a place where cocaine base, or “crack cocaine,” is sold — within their jurisdiction. Officers conducted visual surveillance on the house at all hours of the day and night. They *1293 observed countless people visiting the house, many of whom were not from Macon County. Their visits were brief and often interrupted if police officers were in the vicinity. Two of the individuals whom officers regularly observed at the house were the appellants.
In addition to observing the activities at the crack house, officers also enlisted the services of a confidential informant who made several controlled buys of crack cocaine at the house. After one of these buys, officers raided the house, collecting drug paraphernalia and several weapons; Wilson was present in the house during the raid.
Roughly contemporaneous with this eight-month period of police surveillance, appellants were twice arrested for possession of crack cocaine. The first arrest occurred on October 17, 1994; officers in the Tuskegee, Alabama, Police Department, responding to a disturbance call at a local convenience store, detained appellants after observing a pistol on the dashboard of Herndon’s car. Herndon was in the driver’s seat at the time; Wilson occupied the other front seat. In the course of searching the vehicle for more weapons, the police found two pill bottles — one under each front seat — containing a combined total of seven grams of crack cocaine.
The second arrest occurred nine months later, on July 25, 1995. Officers in the Notasulga, Alabama, Police Department detained appellants — this time in Wilson’s car — at a license checkpoint. Because Wilson did not have a license, he was escorted to a patrol car. There, Wilson explained to the officer that he had some identification in his glove compartment, and an officer walked back to the car to retrieve it. When Herndon, who had remained in the car, opened the passenger door so the officer could search for the license, the officer observed a black leather ease between the passenger seat, where Herndon was sitting, and the door. In the case the officer saw a plastic bag containing a “milky white substance,” which was later determined to be forty-six grams of crack cocaine. At that moment, Wilson fled the scene on foot. Officers placed Herndon in the police cruiser and pursued Wilson; they apprehended him not far from the checkpoint.
On August 29, 1995, a Middle District of Alabama grand jury indicted appellants on four counts. Count I charged appellants with conspiracy to possess with intent to distribute crack cocaine between October 17, 1994, and July 25, 1995, in violation of 21 U.S.C. § 846 (1994).[1] Count II charged appellants with possession with intent to distribute crack cocaine on October 17, 1994, in violation of 21 U.S.C. § 841(a)(1) (1994).[2] Count III charged appellants with using and carrying a firearm during and in relation to a drug trafficking crime (Counts I and II), in violation of 18 U.S.C. § 924(c)(1) (1994).[3] Count IV charged appellants with possession with intent to distribute crack cocaine on July 25, 1995, also in violation of 21 U.S.C. § 841(a)(1).
At the time the indictment was returned, Wilson was in custody, and he remained in custody throughout the prosecution of that case. Herndon was not taken into custody until his arrest on January 6, 1996. Given his pre-trial detention status, Wilson was tried first, in November 1995. A jury convicted him on all four counts, and the court sentenced him to concurrent prison sentences of 151 months *1294 for the drug offenses, and a consecutive prison sentence of 60 months for the firearm offense.[4]
Herndon was tried in May 1996. After the district court direct the verdict for Herndon on Count 3, the conspiracy charge, a jury found him guilty of counts I, II, and IV of the indictment. The court sentenced Herndon to concurrent prison terms of 135 months on Counts I and II and to a consecutive prison term of 60 months on Count IV.
Wilson and Herndon now appeal. In Part II, we address Wilson’s appeal. In Part III, we consider Herndon’s appeal.
II.
Wilson’s sole challenge on appeal concerns his conviction, for violating 18 U.S.C. § 924(c)(1), which prohibits a person, “during and in relation to any ... drug trafficking crime,” from “us[ing] or earr[ying] a firearm.” Specifically, Wilson contends that a Supreme Court decision that was handed down between his trial and his sentencing hearing, Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), mandates a retrial of Count III of his indictment, which alleged that Wilson “did knowingly use and carry a firearm” on October 17, 1994, in committing the offenses charged in Counts I and II. Bailey significantly narrowed the “use” prong of section 924(c)(1) by requiring proof under that prong of “active employment” of the firearm in the commission of the underlying offense. See id. at 144, 116 S.Ct. at 506. Wilson claims that the Bailey decision’s treatment of the “use” prong of section 924(c)(1) is important here given that (1) the indictment alleged that Wilson “used and carried” a firearm, (2) the district court instructed the jury more extensively on the “use” prong than on the “carry” prong of section 924(c)(1), and (3) the prosecutor, in closing argument to the jury, focused on the word “use” in contending that the presence of the firearm on the dashboard of Herndon’s automobile (from where the police seized the firearm) rendered Wilson guilty of the section 924(c)(1) offense. Wilson contends that, because there was no active employment of the firearm in this case, it was impermissible for the prosecutor to focus his argument on, and the court to charge the jury on, the “use” prong of section 924(c)(1).
At his sentencing hearing, Wilson, citing the intervening Bailey decision, moved the court to dismiss Count III; alternatively, he moved the court to grant him a new trial on that count. In essence, he claimed, as he does on appeal, (1) that the erroneous jury instruction on the “use” prong of section 924(c)(1) led to an unreliable jury verdict; and (2) that the evidence of “carrying” was insufficient to support a conviction under section 924(c)(1).[5] The court denied his motion.
We previously have had occasion to address these very claims. In United States v. Range, 94 F.3d 614, 617-20 (11th Cir.1996), a gun was found under the front seat floor mat of a car the defendant Range drove to the site of a drug transaction. The gun was found by surveillance agents when they arrested the participants in the transaction. Range was convicted of committing two drug offenses and of “using and carrying” a firearm while committing those offenses in violation of section 924(c)(1).[6] Id. at 616. He appealed, *1295 arguing both that the evidence was insufficient to support a conviction under the “carry” prong of section 924(c)(1), and that the district court’s erroneous jury instruction on the “use” prong of section 924(c)(1) led to an unreliable jury verdict.
The panel first addressed Range’s sufficiency claim; it found that the evidence of the firearm under the floor mat of the car was sufficient to support a jury finding that the defendant was “carrying” the firearm. Id. at 618; see also Muscarello v. United States, 524 U.S. 125, 118 S.Ct. 1911, 1918-19, 141 L.Ed.2d 111 (1998) (concluding that “carrying” for the purposes of section 924(c)(1) includes carrying a firearm in a vehicle, whether or not it is immediately accessible); United States v. Farris, 77 F.3d 391, 395-96 (11th Cir.1996) (evidence sufficient to support a conviction under section 924(c)(1) when the gun was found in the glove compartment of a vehicle used as a drug distribution center). Clearly, then, in our case, the evidence, which established that the firearm was on the dashboard[7] of the vehicle in which Wilson was apprehended, was sufficient to support a finding that Wilson was “carrying” a firearm.
The Range court next addressed the district court’s erroneous jury instruction on the “use” prong of section 924(c)(1). The district court instructed the jury as follows:
Now members of the jury, as to Count Three, Title 18, United States Code, Section 924(c)(1), makes it a separate crime or offense for anyone to use or carry a firearm during and in relation to the commission of a drug trafficking offense.
A defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant committed the felony offense charged in count one and count two; second, that such offense was a drug trafficking offense; and third, that the defendant knowingly used or carried the firearm described in the indictment while committing such drug trafficking offense.
To show use of the firearm the government need not prove that the firearm was fired, brandished, or even displayed during the drug-trafficking offense. However, mere presence of the firearm would not constitute use within the meaning of the statute. Rather, possession of a firearm constitutes use in relation to the drug-trafficking offense if the firearm played a purpose or function in carrying out the drug-trafficking offense.
Range, 94 F.3d at 617. The government properly conceded on appeal that the instruction on “use” was’ erroneous under Bailey; it contended, however, that Range’s conviction should be upheld “because the evidence was sufficient to establish that Range carried the firearm” in *1296 committing the charged drug offenses. Id. The panel disagreed; the fact that the evidence was sufficient to support a finding that Range carried the firearm did not answer the question whether the jury-based its verdict on the “carry” prong, rather than the “use” prong, of section 924(c)(1). After all, the last sentence of the court’s instruction quoted above authorized the jury to find that the mere presence [8] of the firearm under the floor mat of Range’s automobile constituted “use,” provided that “the firearm played a purpose or function” in the drug transaction Range and his confederates were about to consummate.
Although (in our view) the jury could have found such “use,” the panel concluded that the erroneous “use” instruction did not taint the jury’s finding that Range was guilty of the section 924(c)(1) offense. The panel reached this conclusion because it was able to “determine with absolute certainty that the jury based its verdict on the ground on which it was properly instructed,” that is, the “carry” prong of section 924(c)(1). Id. at 620 (citing United States v. Miller, 84 F.3d 1244, 1257 (10th Cir.1996)). Specifically, the panel stated: “The evidence of the ‘carrying’ of a firearm was overwhelming, and there was a complete absence of evidence from which the jury could have found ‘use,’ as opposed to ‘carrying,’ under the erroneous instruction.” Id.
With two exceptions, the facts in Range fit hand and glove with the facts in the instant case. The first exception is that the firearm in Range was under the floor mat of the front seat, whereas the firearm here was located on the dashboard. This difference is immaterial. The second exception is that, in Range, the defendants were in the process of completing a drug transaction, whereas here no drug transaction was imminent. In fact, one would need a crystal ball to predict when, where, and to whom Herndon and Wilson planned to distribute the crack cocaine in their possession. To the extent that this difference is material, if at all, the inference of “use” in Range was stronger than the inference of “use” in the case at hand. Thus, if the panel in Range felt bound to “determine with absolute certainty” that the jury based its verdict on the “carry” prong of section 924(c)(1), then we likewise are bound to make the same determination — unless the district court’s instructions to the jury were materially different from the instructions in Range.
While the instructions differed in some respects, they were essentially (and materially) the same. The court here charged the jury as follows:
Count three of the indictment charges a violation of Title 18 United States Code section 924(c)(1). This section makes it a separate crime for anyone to use or carry a firearm during and in relation to the commission of a drug trafficking crime. The defendant may be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant committed the felony offense charged in either count one or count two; second, that such offense was a drug trafficking crime; and, third, that the defendant knowingly used or carried the firearm described in the indictment while committing such drug trafficking offense.
* * *
To establish that a firearm was used or carried during or in relation to a drug trafficking crime, the Government need not prove that the firearm was fired, brandished or even displayed during the drug trafficking crime. However, the mere presence of a firearm does not constitute use within the meaning of the law. Possession of a firearm constitutes *1297 use in relation to a drug trafficking crime if the possession is an integral part of and facilitates commission of the drug trafficking crime.
It is enough if the firearm is present for protection or to facilitate the likelihood of success, whether or not it is actually used, or to instill courage in an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred.[9]
This instruction’s reference to “carry” is essentially identical to the instruction’s reference to “carry” in Range. This instruction’s comment on “use,” which required that the weapon be “an integral part of and facilitate! ] commission of the drug trafficking crime,” is more narrow than the instruction’s comment on “use” in Range, which stated that the defendant “used” a firearm if his possession thereof “played a purpose or function in carrying out the drug-trafficking offense.” Consequently, the chance that the jury in the instant case based its verdict on “use” is certainly no greater than the chance that the jury in Range based its verdict on “use.”
The instruction before us did go a bit further than the instruction in Range; it informed the jury that
[i]t is enough if the firearm is present for protection, or to facilitate the likelihood of success, whether or not it is actually used, or to instill courage in an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred.
It is highly unlikely that the jury based its verdict on the second clause (“facilitate the likelihood of success”) or the third clause (“instill courage in an actor ....”) of this sentence. For the jury to have based its verdict on the second clause, it would have had - to find that a drug transaction was either in progress or imminent (such that the firearm could facilitate the likelihood that a drug transaction would successfully take place). It could not have made such a finding because there was no evidence before it of any impending drug transaction.[10] Surely, the jury could not have made such a finding beyond a reasonable doubt. For the jury to have based its verdict on the third clause, it would have had to find that Wilson had the “opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred,” and that the firearm was present on the dashboard “to instill' courage.” In our view, the jury could not have made such findings beyond a reasonable doubt, because there was no proof of these elements; in fact, the third clause should not have been included in the instructions in this case given the evidence before the jury.
If the jury focused on this sentence of the instruction at all, then, it must have focused on the first clause and asked itself whether “the firearm [was] for protection.” We believe that the jury did so, and answered the question in the affirmative. We also believe, like the panel in Range, that the jury found that Wilson was “carrying” the firearm as he and Herndon sat (in Herndon’s car) in the convenience-store parking lot.
Judge Kravitch in her dissent suggests that the final sentence of the district court’s instruction quoted above constitutes an improper “use” instruction (presumably because it follows a senténce that describes what sorts of possession will constitute “use”). We disagree. This is merely a statement on the evidence (some *1298 thing akin to a special interrogatory to the jury). In other words, the sentence could just as easily have begun, “It is enough to convict the defendant under this statute if.... ” It did not just explain or describe “use” — it explained what was necessary to convict under section 924(c)(1), implicating both “use” and “carry.” Therefore, this sentence added nothing material to the court’s instruction that would require us to reach a conclusion different from the one the court reached in Range.
However, even if the district judge was attempting to define “use” in this sentence of the instruction, we still must affirm. Clearly, under the facts of this case, the “was present for protection” clause would ■ be a proper “carry” instruction, because the gun was present in a vehicle that was a distribution center for drugs. See Mus-carello, 118 S.Ct. at 1919. Whether the judge thought he was defining “use” and whether the jury thought they were convicting on “use” are of no moment, to the extent that the only conduct that could support a conviction of Wilson constitutes a “carry” under section 924(c)(1).
Given the virtually indistinguishable facts of Range, and the fact that any differences between that case and the present case only increase the probability that the jury here relied on the “carry” prong of section 924(c)(1) in convicting Wilson, we therefore must affirm Wilson’s conviction under that statute.
III.
In contrast to Wilson, Herndon challenges all of his convictions and sentences on appeal. He contends: (1) that the evidence was insufficient to sustain his conviction on Count II of the indictment— possession with intent to distribute crack cocaine on October 17, 1994; (2) that a reversal of his conviction on Count II would require reversal of his conviction on Count III — using or carrying a firearm during and in relation to a drug trafficking offense; (3) that the evidence was insufficient to sustain his conviction on Count III;[11] (4) that the evidence was insufficient to sustain his conviction on Count IV — possession with intent to distribute crack cocaine on July 25, 1995; (5) that the district court erred in calculating his criminal history category under the Sentencing Guidelines, see United States Sentencing Commission, Guidelines Manual, Ch.4 (Nov. 1, 1995); (6) that the court erred in overruling his objection to the distinction drawn in the Sentencing Guidelines between crack cocaine and powder cocaine, see generally U.S.S.G. § 2Dl.l(e);[12] and (7) that the district court erred in concluding that it did not have the authority to consider granting him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. We consider Herndon’s contentions in order.
Herndon first claims that the evidence presented at trial was insufficient to support his conviction on Count II — possession with intent to distribute crack cocaine on October 17, 1994. See supra note 7. Specifically, he argues that the Government failed to offer any evidence on one element of the offense — intent to distribute — thereby necessitating reversal of his conviction and dismissal of that count of the indictment against him.[13] We dis *1299 agree. There is evidence in the record of the following: officers found two pill jars in Herndon’s vehicle on October 17 that contained approximately seven grams of crack cocaine; that the seven grams of crack cocaine had a street value of approximately $800; officers found, in addition to the crack cocaine, a razor blade, which drug dealers often use to cut up rocks of crack cocaine they intend to distribute; and officers conducting a controlled buy of narcotics as part of a related investigation sought to purchase only $50 worth of crack cocaine (from which the jury could reasonably have inferred that an $800 quantity of crack cocaine was an amount associated with a dealer and not a consumer). From this evidence alone, the jury could reasonably have concluded that Herndon had the intent to distribute the crack cocaine that police found in his possession on October 17, 1994; the evidence is therefore sufficient to support that conviction.
Herndon’s second and third claims of error involve his conviction under Count III of his indictment for carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). He contends that a conviction under Count III cannot survive reversal of his conviction under Count II (possession with intent to distribute crack cocaine); alternatively, he contends that the evidence was insufficient to sustain a conviction under Count III because the Government failed to prove an element of the offense — namely, that the alleged firearm [14] was a firearm as defined under 18 U.S.C. § 921(a)(3) (1994). Herndon’s first argument is without merit, given our finding that the evidence was sufficient to support his conviction under Count II.
As for his second argument, we reject it as well. It is undisputed that the Government did not introduce into evidence the weapon that Officer Ronald Foston took from Herndon’s car on October 17, 1994. It is also clear, however, — and Herndon concedes — that the Government is not required to offer the actual weapon into evidence in order to obtain a conviction under section 924(c)(1). Furthermore, not only did Herndon fail to object to the identification of the firearm by the officer at trial or to request a limiting instruction regarding the weapon, he did not present anything to contradict the government’s evidence — -in the form of testimony from Officer Foston — of the firearm. Absent any evidence to the contrary, the jury could reasonably have concluded from Officer Foston’s testimony that the object he identified as a pistol was actually a firearm as defined by section 921(a)(3). Herndon’s counsel did question Officer Foston as to the present location of the firearm; he responded that the weapon likely was still in the property room at the police station. Counsel’s only other questions of Foston on this subject concerned whether carrying a gun was a crime in and of itself.[15] The jury could reasonably have concluded from defense counsel’s exchange with Foston, as well as Foston’s explanation as to the whereabouts of the firearm, that Herndon did possess a firearm on the date in question, and that it was a firearm as defined by 18 U.S.C. § 921(a)(3).
Herndon’s fourth claim of error involves his conviction under Count IV— possession with intent to distribute crack cocaine on July 25, 1995; he argues that the evidence was insufficient to sustain that conviction. As noted earlier, this count of the indictment grew out of a stop *1300 at a license checkpoint. Wilson, who was driving, did not have a license, and as a result he was removed from his car and escorted to a police cruiser. Herndon waited in the passenger seat. When an officer approached the passenger side of the car and opened the door to look for Wilson’s identification, he observed a black bag between the passenger seat and the passenger side door. In the bag he saw a cellophane bag containing a milky white substance (later determined to be crack cocaine). Herndon was convicted of possession with intent to distribute the crack cocaine found in the black bag. Herndon bases his insufficiency claim on his contention that the Government failed to prove an essential element of this 21 U.S.C. § 841(a)(1) offense as well — “knowledge.” See supra note 12. He claims that he had no knowledge of the presence of the drugs in the car, and therefore he could not be convicted under section 841(a)(1).
This claim is without merit. As Hern-don acknowledges in his brief, the Government can establish the element of knowledge with either direct or circumstantial evidence. See United States v. Quilca-Carpio, 118 F.3d 719, 721 (11th Cir.1997) (per curiam). Of course, something more than a passenger’s mere presence in a vehicle is required to establish the element of knowledge, and thus to sustain a conviction under section 841(a)(1). See United States v. Stanley, 24 F.3d 1314, 1320 (11th Cir.1994). What is required, however, varies widely based on the individual facts of each case. In Stanley, we reversed a conviction under section 841(a)(1) because the prosecution failed to establish that the defendant had knowledge of the presence of drugs in the car in which she was a passenger. See id. at 1321. The drugs in Stanley were hidden under the dashboard, out of plain view of the passengers in the car. See id. at 1316. Nothing in the record established that defendant Stanley knew of the drugs behind the dashboard or could even reach them from the passenger seat. See id. at 1321. Furthermore, the evidence before the jury suggested that Stanley was not a principal in the drug transaction between a police informant and another individual in the car, Cameron. What that evidence showed was that Cameron and the informant walked away from the car (out of earshot of the other passengers) to discuss the drug deal. See id. The evidence also showed that Cameron admitted ownership of the drugs after his arrest. See id. We concluded that the sparse evidence offered at trial regarding Stanley (that she could have heard the informant mention drugs when he first approached the vehicle and that she may have been the woman heard during a taped conversation between Cameron and the informant) was not sufficient to sustain her conviction under section 841(a)(1).
Stanley, however, is clearly distinguishable from the present case. Here, the drugs were not hidden; rather, the crack cocaine was in plain view between the passenger seat and the door. The cocaine was, in fact, more under the dominion of Herndon than of Wilson (given their respective positions in the vehicle). In addition, the evidence implicated Herndon and Wilson in another act of possession with intent to distribute crack cocaine, on October 17, 1994. Finally, evidence linked Herndon to a crack house only a short distance from the license checkpoint where the police stopped appellants. All of this circumstantial evidence could have led the jury rationally to conclude, beyond a reasonable doubt, that Herndon knew of the existence of the drugs directly beside him in the vehicle. Of course, it is clear that he constructively possessed the drugs (given his proximity to them), and his intent to distribute the drugs could be inferred from the large quantity found in his possession. We therefore conclude that the evidence presented at trial was sufficient to support Herndon’s conviction under Count IV.
In his fifth claim of error, Herndon contends that the district court erred in calculating his Criminal History Category under the Sentencing Guidelines.[16] Herndon *1301 objected to the inclusion in his presentence investigation report (PSI) of a prior conviction for carrying a concealed weapon; he claimed he had no recollection of such conviction.[17] The probation officer who prepared Herndon’s PSI was not present at Herndon’s sentencing hearing; she had been transferred to another probation office. A substitute probation officer therefore attended the hearing. After listening to Herndon’s objection, the court questioned the officer extensively regarding this conviction. The officer answered many of the questions by reviewing the notes of his predecessor, who had traveled to the municipal court building in Tuskegee to confirm Herndon’s prior conviction through review of court documents. His predecessor had also obtained a copy of the arrest record, though it is unclear whether it was introduced as evidence at the sentencing hearing. The court found, from its on-the-record colloquy with the probation officer and its review of the PSI, that Herndon had been fined for this offense, and that therefore he must have been found guilty of it.
We find no clear error in the district court’s finding. A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant’s sentence, provided that the information is sufficiently reliable. See United States v. Castella nos, 904 F.2d 1490, 1495 (11th Cir.1990). While the best approach would always be to produce a certified copy of the conviction, we find the sources the district court relied upon — a PSI, the on-the-record statements of a probation officer, and the notes of another probation officer — when taken together, were sufficiently reliable to support the court’s finding that Herndon had been convicted of the weapons charge in question. The court therefore did not err in considering this prior conviction when determining Herndon’s Criminal History Category for sentencing purposes.
Herndon’s sixth claim of error involves the district court’s failure to grant him a two-level reduction in his base offense level for his acceptance of responsibility. We review a court’s application of the Sentencing Guidelines de novo. See United States v. Miller, 166 F.3d 1153, 1155 (11th Cir.1999). Herndon’s claim is that the district court erroneously believed it lacked the authority to grant his request for a two-level acceptance of responsibility reduction. If the court entertained such belief, it erred. See United States v. Chase, 174 F.3d 1193, 1195 (11th Cir.1999) (stating that this court has jurisdiction to review a district court’s holding that it lacks discretionary authority to depart downward).
At the sentencing hearing after Herndon assumed responsibility for his criminal conduct, and his attorney requested a two-level reduction under U.S.S.G. § 3E1.1, the district judge stated as follows: “I don’t know of any law that would allow me to be more lenient on you than I am.” This was a misstatement of the law. Section 3E1.1 permits the sentencing court to grant a defendant a two- or three-level reduction of his base offense level if the defendant accepts responsibility for his actions. Furthermore, application note 2 to section 3E1.1 clearly states that conviction by trial (rather than following a guilty plea) does not preclude a judge from granting this downward adjustment (though the exceptions are limited and may not be applicable in Herndon’s case). Therefore, the court erroneously determined that it did not have the authority to make this downward adjustment, and we must remand Herndon’s case for the limited purpose of allowing the district court to determine, at a new sentencing hearing, whether he is eligible for such an adjust *1302 ment in his base offense level for Counts II and TV.

IV.

For the forgoing reasons, we AFFIRM Wilson’s section 924(c)(1) conviction, and we AFFIRM Herndon’s convictions on all counts, but we VACATE Herndon’s sentences and REMAND his case for further proceedings consistent with this opinion.
SO ORDERED.

. Section 846 states, in part, as follows: "Any person who ... conspires to commit any offense defined in this subchapter [of which section 841 is a part] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy.”

. Section 841(a)(1) states, in part, as follows: "[I]t shall be unlawful for any person knowingly or intentionally ... [to] possess with intent to manufacture, distribute, or dispense, a controlled substance.”

.Section 924(c)(1) states, in part, as follows: "Whoever, during and in relation to any ... drug trafficking crime, ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years.”

. 18 U.S.C. § 924(c)(1) required the district court to impose a five-year term of imprisonment for the firearm offense, to run consecutively to Wilson's sentences on Counts 1, 2, and 4.

. We review sufficiency of the evidence claims de novo, drawing all reasonable inferences in favor of the Government. See United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir.1999).

.Although the indictment in Range alleged that Range "used” and "carried” a firearm during and in relation to a drug trafficking offense, the statute reads in the disjunctive, meaning that a defendant violates section 924(c)(1) if he "uses” or "carries” a firearm while committing the underlying offense. In that "use” and "carry” are alternative means of violating section 924(c)(1), "jury unanimity is not required with respect to the 'use' and ‘cariy’ elements.” Range, 94 F.3d at 619. In other words, a jury could legitimately convict *1295 a defendant even if some of the jurors thought that the defendant “used,” but did not "carry,” a firearm, while the other jurors thought that the defendant “carried,” but did not “use,” a firearm.
As in Range, the indictment in the instant case charged the defendants with "using and carrying” a firearm during and in relation to drug trafficking offenses. As we conclude, infra, Wilson’s conviction must be upheld because there is no doubt that he was carrying a firearm at the time he and Herndon were arrested on October 17, 1994.

. We see no merit in Wilson's argument that he was not carrying the firearm because it was on the driver’s side of the dashboard, while he was seated in the passenger seat next to the driver, Herndon. The jury, having found that Wilson had conspired to traffic crack cocaine and that he possessed with intent to distribute crack cocaine at the time officers found appellants with the firearm, reasonably could have found that Wilson had as much access to, and control over, the firearm as did Herndon. Furthermore, the Supreme Court has held that immediate accessibility is not necessary to support a conviction under section 924(c)(1) for “carrying” a firearm. See Muscarello, 118 S.Ct. at 1914, 1918-19 (concluding that both driver and passenger could be convicted of carrying firearms under section 924(c)(1) when the firearms were located in the trunk of the vehicle in which they were driving).

. The penultimate sentence of the Range instruction quoted above refers to "mere presence” of a firearm; the final sentence refers to "possession” of a firearm. In the context of the case and the court's instructions to the jury — involving the presence of a firearm under the floor mat — it is obvious that the words presence and possession were interchangeable.

. The portion of the instruction not included in this quotation is irrelevant in the context of this discussion.

. Of course, evidence of an impending drug transaction is not necessary to trigger the provisions of section 924(c)(1), when, as is the case here, the predicate offenses triggering those provisions are possession with intent to distribute crack cocaine and conspiracy to do the same. There is ample evidence in the record from which the jury could convict defendants of those predicate offenses.

.Appellant Herndon did not face trial until after the Supreme Court issued its Bailey decision; thus, his indictment was properly amended to charge him only with "carrfying]” a firearm during and in relation to a drug trafficking crime, and the jury in Herndon’s case was properly instructed on the "carry” prong (and not the "use” prong) of section 924(c)(1). Herndon therefore makes no claim of error similar to that of Wilson regarding the “use” prong of section 924(c)(1).

. We have previously rejected a claim that the Sentencing Guidelines impermissibly distinguishes between crack cocaine and powder cocaine, see United States v. Byse, 28 F.3d 1165, 1170-71 (11th Cir.1994); we therefore shall not address that claim further.

. In order to obtain a conviction under 21 U.S.C. § 841(a)(1), the Government must establish the existence of three elements: (1) knowledge (of one’s possession); (2) possession of a controlled substance; and (3) intent *1299 to distribute that substance. See United States v. Poole, 878 F.2d 1389, 1391 (11th Cir.1989).

. For some reason, the Government did not enter into evidence the firearm the officers found on the dashboard of Herndon's car on October 17, 1994. Therefore, the only evidence of the weapon's existence before the jury was the testimony of Officer Ronald Fo-ston.

. In fact, Herndon's counsel engaged in a lengthy discussion with Officer Foston regarding, among other things, the Second Amendment’s guarantee of a person's right to bear arms, the propensity of members of the black community to carry weapons (a generalization we find highly offensive), and the general legality of carrying a firearm.

. We review the district court's application of the Sentencing Guidelines de novo, and its *1301 findings of fact for clear error. See United States v. Miller, 166 F.3d 1153, 1155 (11th Cir.1999) (per curiam).

. There is actually some dispute as to whether he objected to the conviction or only to the arrest. This dispute does not affect our holding on this matter, and we therefore need not resolve it.