[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10570
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00431-MHT-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW XAVIER SALERY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 8, 2017)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Andrew Salery appeals his convictions and 90-month sentence for two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 941(b)(1)(D).  Salery first argues the district court erred when it determined he was competent to plead guilty.  He next argues he did not knowingly or voluntarily waive his right to appeal.  And if his appeal waiver is not valid, then he argues the district court erred in imposing a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) for possessing a stolen firearm.  After careful review, we conclude Salery's appeal waiver is not enforceable but affirm his convictions and sentence.

## I.

On December 16, 2014, Salery was charged by superseding indictment with five counts.  After he was charged, his counsel filed a motion for competency determination.  Dr. Robert Shaffer, a clinical psychologist, evaluated Salery in January 2015.  Dr. Shaffer concluded Salery "exhibited symptoms consistent with . . . Schizoaffective Disorder, Major Neurocognitive Disorder, and Posttraumatic Stress Disorder" as well as possibly "Borderline Personality Disorder and Attention Deficit Hyperactivity Disorder."  Dr. Shaffer also conducted neurological testing that showed impairment of Salery's frontal lobes.  As a result

2

of Dr. Shaffer's findings, the district court ordered the Bureau of Prisons to evaluate Salery's competency to stand trial.

Dr. Tennille Warren-Phillips, a licensed psychologist, evaluated Salery's competence for the Bureau of Prisons over a two-month period.  She administered several tests to Salery, one of which showed his IQ was 58.  However, she suspected Salery intentionally misrepresented himself as impaired because of validity indicators in the testing and because Salery's results did not align with his reported academic performance.  Dr. Warren-Phillips diagnosed Salery with severe Oppositional Defiant Disorder, Antisocial Personality Disorder, Borderline Personality Disorder, and severe Cannabis Use Disorder.  She concluded Salery was competent to stand trial because he "exhibited good verbal skills, memory, and related abilities necessary to consult effectively with counsel."  In her opinion, Salery did not appear to suffer from any mental issue that would make him unable "to understand the nature and consequences of the proceedings against him or to properly assist in his defense."

The district court then held a hearing to determine Salery's competence. Both Dr. Shaffer and Dr. Warren-Phillips testified and were cross-examined. Based on the two doctors' reports and the evidence presented at the hearing, the district court found "Salery is competent and has the mental capacity to stand trial."  The court recognized Dr. Shaffer's conclusions, but credited Dr. Warren-

Phillips's testimony over his because she evaluated Salery for a longer period of time and with more comprehensive testing. However, the district court later issued an order telling the parties to jointly craft a plan for Salery to receive "immediate and regular" mental-health treatment. The court said although Salery was competent to proceed, it recognized the serious mental-health issues he suffered.

In October 2015, Salery agreed to plead guilty to two counts of possession of a firearm by a convicted felon and one count of possession of marijuana with intent to distribute. In exchange, the government dropped two other charges against him and agreed Salery would receive a sentence of no more than 10-years imprisonment. The plea agreement also contained an appeal and collateral attack waiver.

The district court held a plea colloquy at which Salery pleaded guilty. The district court questioned Salery about whether he understood the effects of his plea deal including that he had the right to appeal his sentence "under some circumstances." Salery said he did. The court then asked if he understood he was waiving his right to appeal any sentence imposed. Salery again said yes, but the court noted his hesitancy. Salery replied he was comprehending everything as best he could and that the court could "go ahead." The court found him competent to enter a plea and accepted the plea agreement. Salery was sentenced to 90-months imprisonment.

## II.

"We review a district court's determination of competency to stand trial as a factfinding subject to reversal only for clear error." United States v. Saingerard, 621 F.3d 1341, 1343 (11th Cir. 2010) (per curiam) (quotation omitted).  The district court's competency finding "is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed." United States v. Izquierdo, 448 F.3d 1269, 1278 (11th Cir. 2006) (per curiam) (quotation omitted).

We review de novo the validity of a sentence appeal waiver.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).  We review for clear error the district court's factual findings on sentencing matters, including guidelines enhancements.  United States v. Bradley, 644 F.3d 1213, 1283 (11th Cir. 2011).

## A.

Salery first argues the district court clearly erred when it found he was competent to plead guilty.  He points to Dr. Shaffer's evaluation and testimony, as well as the district court's acknowledgement of his mental-illness history and order that he receive treatment.  "The standard for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well

5

as factual understanding of the proceedings against him." Bradley, 644 F.3d at 1268 (quotation omitted).

Dr. Shaffer and Dr. Warren-Phillips conducted evaluations of Salery but reached different conclusions on his competency to stand trial. The district court held a full competency hearing where both experts testified and were subject to cross examination. Under this Court's precedent, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Izquierdo, 448 F.3d at 1278 (quotation omitted). And when the district court is "[f]aced with diametrically opposite expert testimony, [it] does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." Bradley, 644 F.3d at 1268 (quotation omitted). The district court here was faced with conflicting opinions and evaluations from two experts, and chose to credit Dr. Warren-Phillips over Dr. Shaffer because she evaluated Salery for a longer period of time and with more comprehensive testing. See id. And although the district court acknowledged Salery's mental-health issues, it specifically found he was still competent to proceed despite them. Thus, the district court did not clearly err in finding Salery competent.

B.

Next, Salery argues his appeal and collateral attack waiver is invalid because he did not knowingly or voluntarily waive his rights.  An appeal waiver is valid if it was knowingly and voluntarily made.  United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).  For it to be knowing and voluntary, the government must show: "(1) the district court specifically questioned the defendant" about the waiver; or "(2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  Id. at 1351.  The text of the plea agreement alone is not sufficient to find the defendant made an appeal waiver knowing and voluntarily.  Id. at 1352.

Although Salery was competent to stand trial and waive his rights, his appeal and collateral attack waiver is not enforceable on this record.  The district court first asked Salery if he understood he could appeal his sentence "under some circumstances."  In Bushert, this Court held this exact language was not sufficiently clear for a valid waiver.  Id. at 1352–53.  The Bushert panel said such language was "confusing" because although it was "true that even under the terms of the sentence appeal waiver, [the defendant] could appeal his sentence under some circumstances," the court's statement "did not clearly convey to [the defendant] that he was giving up his right to appeal under most circumstances."  Id.  The court then asked Salery if he understood he was waiving his right to appeal

7

any sentence imposed. Salery said yes, but the record shows the court thought Salery "seem[ed] to be hesitant about this." Salery replied he was comprehending everything to the best of his ability. This Court has held the district court's questioning at the plea colloquy must "establish[] that the defendant understood the nature and extent of the appeal waiver and agreed to it" in order to satisfy the requirements in Bushert. United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997) (per curiam). Because the district court did not explain with specificity the nature and extent of the appeal waiver; was contradictory in its questioning about the scope of Salery's appeal rights; noted Salery's hesitancy; and because Salery has a recognized history of mental-health issues, we cannot say on this record it is "manifestly clear" that Salery understood the full significance of his waiver. See Bushert, 997 F.2d at 1353. As a result, Salery's appeal and collateral attack waiver is not enforceable and it is severed from his plea deal. Id. at 1353–54.

## C.

Because his appeal waiver is not valid, Salery may appeal his sentence. Salery argues the district court erred when it applied a two-level enhancement to his guidelines range under § 2K2.1(b)(4)(A) after finding the offense involved a stolen firearm. He says the district court's factual finding was clearly erroneous because it was based on the testimony of the case agent, which was impermissible

hearsay.  Salery also argues this hearsay was unreliable because it was based on a stolen firearm report about a 9 mm Glock, but he was found with a .40 caliber Glock.

The district court may consider any information (including hearsay), "regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence."  United States v. Ghertler, 605 F.3d 1256, 1269 (11th Cir. 2010) (quotation omitted); see also USSG § 6A1.3(a).  Hearsay evidence at sentencing is sufficiently reliable when it is consistent with or corroborated by other evidence.  See United States v. Gordon, 231 F.3d 750, 760–61 (11th Cir. 2000); United States v. Wilson, 183 F.3d 1291, 1301 (11th Cir. 1999).

The district court properly applied the two-level enhancement for possessing a stolen firearm.  The court did not clearly err by relying on the case agent's testimony, regardless of whether it was hearsay, because it was sufficiently reliable.  See Ghertler, 605 F.3d at 1269.  Salery is correct that the incident report about the stolen firearm misreported the stolen weapon as a 9 mm Glock.  But at sentencing, the case agent testified that she traced the .40 caliber Glock found in Salery's possession to its original owner.  That owner told her his .40 caliber Glock

9

had been stolen from his wife's car.  He explained his wife filled out the police report and mistakenly detailed the stolen firearm as a 9 mm Glock.  The original owner also provided a bill of sale for the .40 caliber Glock he said was stolen.  The serial number on the bill of sale matched the firearm found in Salery's possession.  Because of this corroboration, we agree with the district court that although the testimony included hearsay, it was sufficiently reliable to support a factual finding.  See id.  As a result, Salery's convictions and sentence are affirmed.

**AFFIRMED.**