[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13967

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRODERICK TRAMAINE YOUNG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00168-KD-B-1

_____

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Broderick Young appeals his sentence of 120 months' imprisonment for violation of 18 U.S.C. § 922(g)(4) for possession of a firearm by a prohibited person. On appeal, Young challenges the six-level enhancement imposed under U.S.S.G. § 3A1.2(c)(1) for assaulting victims that he knew or had reasonable cause to believe were law enforcement officers. He argues that his mental state negated his specific intent, and that the Eighth Amendment prohibits making a person's mental illness a criminal offense. He also argues that the district court did not adequately consider his mental illness when weighing the 18 U.S.C. § 3553(a) factors, and, thus, his sentence to the statutory maximum term was in error. We disagree and hold that the district court adequately considered Young's mental state, including his mental illness, with relation to both the six-level enhancement and the § 3553(a) factors. Accordingly, we affirm.

## I.　　Background

In February of 2022, Broderick Young arrived at his mother's house in Monroeville, Alabama, intoxicated and agitated. Shortly thereafter, officers were called to the area after Young shot a teenager within the residence. Upon the officers' arrival, Young opened fire at them with armor piercing rounds from a semi-automatic rifle. None of the officers were shot, though two officers sustained non-life-threatening injuries from shrapnel. The

officers eventually took Young into custody, and emergency medical personnel were able to remove the teenage victim from inside a nearby home.[1]  Officers later searched two vehicles registered to Young and recovered ammunition matching that found in his pockets, a freshly consumed bottle of gin, and unopened prescription pills for his schizophrenia.

Young was charged with two counts of possession of a firearm by a prohibited person.  Young initially pleaded not guilty and subsequently filed his notice of intent to assert insanity as a defense.[2]  The government responded with an unopposed motion pursuant to 18 U.S.C. §§ 4241(a) and 4242(a) for pretrial psychiatric or psychological examination of Young, which the magistrate judge granted.  Young was sent to the Metropolitan Correction Center in Chicago, Illinois, for evaluation, where Dr. Drew J. Miller compiled Young's psychiatric report.

Dr. Miller evaluated Young and stated that, in addition to a history of mental illness including schizophrenia, "Mr. Young is likely attempting to downplay his cognitive abilities and exaggerate his symptoms of mental illness, possibly to avoid facing his charges

---

[1] The victim suffered life-threating injuries but ultimately survived.

[2] Notably, in July 2020, Young was adjudicated as mentally defective and committed to a mental institution by order of an Alabama state probate court. And in November 2020, a Florida state court issued a restraining order against Young, which included a finding that he "was a credible threat to the physical safety of the intimate partner."

and be placed in an inpatient psychiatric hospital setting."   Dr. Miller therefore diagnosed Young with "malingering." Accordingly, he did not find Young's mental illness rose to the level of serious disruption to his mental awareness and opined Young was competent to stand trial.  In an addendum to his primary analysis, Dr. Miller also noted that Young admitted in their conversations that he knew the officers who arrested him after the incident were "police."

After receiving the results of Young's evaluation, the district court held a competency hearing and found Young competent to proceed to trial.  Thereafter, Young notified the district court that he would plead guilty.  The court subsequently held a change-of-plea hearing, and Young pleaded guilty to both counts.

Prior to sentencing, the Presentence Investigation Report ("PSI") calculated a total offense level of 39.  U.S.S.G. § 2K2.1(c), which controls the sentencing guidelines for possession of a firearm by a prohibited person, cross-references § 2X1.1 if the defendant "used or possessed" the firearm in the "commission or attempted commission of another offense."[3]   In turn, § 2X1.1

---

[3] In full, U.S.S.G. § 2K2.1(c) states

    (1) If the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be

23-13967                    Opinion of the Court                    5

requires the base level of any underlying offense be calculated under the underlying offenses guideline. Thus, the PSI calculated Young's base offense level to be 33 pursuant to U.S.S.G. § 2A2.1(a)(1) after finding the underlying offense was attempted first-degree murder as a result of Young firing from a defensive position on the officers as soon as they arrived. The PSI then added 3 points for the severity of the injury to the teenage victim under § 2A2.1(b)(1)(C) and an additional six point enhancement under U.S.S.G. § 3A1.2(c)(1) because Young knew, or had reason to know, that the assault was on law enforcement officers.[4] Finally, because

---

> used or possessed in connection with another offense, apply—
>
> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above; or
>
> (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

[4] In full, U.S.S.G. § 3A1.2(c)(1) states a six level enhancement to the PSI applies if:

> (c) [ ] in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable--
>
> (1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom

Young accepted responsibility by pleading guilty, 3 points were deducted from his offense level under U.S.S.G. § 3E1.1(a) and (b), bringing the total to 39 points.

With a criminal history category of I and a total offense level of 39, the guideline range of imprisonment was 262 to 327 months. However, because the statutory maximum was 120 months for each count, the guideline range became 120 months for each count, in accordance with U.S.S.G. § 5G1.1(a). Young objected to both the cross-reference to the attempted-murder guideline in § 2A2.1(a)(1), as well as the six-level enhancement in § 3A1.2(c)(1) for attempting to assault law enforcement officers.

At the sentencing hearing, Young supported his objection to the PSI's cross-reference to attempted murder by arguing that he lacked the requisite intent for a finding of attempted murder. Referring to the psychiatric report, his counsel noted that Young told Dr. Miller that he heard a voice on the day of his arrest saying that his brother was going to be killed and that he was not intoxicated. Further, his counsel emphasized (1) that Young took a $273 taxi to get to Monroeville, (2) that he allegedly had a vision of his family being shot, (3) that he saw demons or ghosts and shot at them, (4) that he saw a Humvee drive down the street, (5) that "Illuminati people" were wearing white masks, and (6) that he recalled shooting blindly over the top of a car he was using as cover, and stopped shooting because he thought his mother and brother were in the line of fire. Thus, Young argued that while he understood he was a prohibited person and possessed a gun, "he

was harboring this delusion that he was basically being hunted down" and therefore did not have the intent to kill anyone. Given his documented history of schizophrenia, he argued that although the act of shooting was intentional, it was not premeditated murder because it lacked the requisite intent.

The district court overruled Young's objection to the cross-reference. The district court questioned Young's testimony that he was not intoxicated at the time of the incident given the discovery of empty gin bottles in his vehicle and his mother's statement that she believed he was intoxicated when he arrived. The district court further noted that if voluntary intoxication enhanced or aggravated his psychological problems, Young would not be able to negate the intent element of the offense. Ultimately, the court found Young's objection was unwarranted.

The government then presented a series of witnesses in support of its contention that Young had the necessary intent for attempted premeditated murder and knowingly assaulting an officer. Officer Ellis Manuel testified first that Young accurately recounted who was in the house at the time of the incident. He further testified that he did not observe "any kind of freak-out or mumbling or anything like that," that EMS was not called to tend to Young for any kind of mental health episode, and that it was his opinion that Young knew what he was doing on that day. Two witnesses, the chief investigator for the case and an FBI agent, also testified that Young did not appear to be experiencing a manic episode based on their investigations, though Young later

responded to attempts to interview him with grunts, religious questions, and discussions of demonic possession.  Finally, John Green Jr., the officer who returned fire against Young, testified that Young was trying to evade arrest and stated after shooting, "[g]et in jail, get in prison, it's all the same."  Officer Green also testified the identity of the officers was likely obvious to Young, as the police arrived on scene in marked cars and running lights and sirens.

After hearing the government's proffered testimony, the district court ultimately found the appropriate underlying charge for sentencing purposes was assault with intent to commit second-degree murder.  The court found that Young was intoxicated, and when police arrived, he shot at them in a callous, if not intentional, manner that aimed to harm the officers.  It found Young's erratic actions were insufficient to prove the requisite intent for attempted first-degree murder, but sufficient for purposes of attempted second-degree murder.  The court then overruled the second objection to the § 3A1.2(c)(1) official-victim enhancement on the same basis that it overruled the first objection, finding that Young was either aware that he was firing at officers or was only unaware due to his voluntary intoxication.

As a result of downgrading the cross-referenced crime to second-degree murder, the court recalculated the guidelines' advisory sentencing range.  Because there was no finding that the object of the offense was first-degree murder, the base offense level changed to a 27 under § 2A2.1(a)(2).  Relevantly, the court also

credited the malingering finding, which included an admission by Young that he knew the officers responding to the scene were "police." The court thus maintained the challenged six-point enhancement under § 3A1.2(c)(1) for attempting to injure law enforcement officers. Ultimately, these revisions resulted in an adjusted total offense level of 33 and a guideline range of 135 to 168 months' imprisonment. However, because this recommendation still exceeded the maximum statutory range, the statutory maximum sentence of 120 months remained the guideline range of imprisonment.

The district court further found that a downward variance was unwarranted. The court emphasized that the situation was exceptionally dangerous and that it was extremely fortunate there were no casualties. Because the statutory maximum was below the suggested range from the sentencing guidelines, the court imposed the statutory maximum of 120 months' imprisonment.[5]

## II.    Discussion

Young challenges his sentence on two grounds: that the district court failed to take his mental illness into account both when assigning the six-point enhancement in calculating the guideline sentencing range under § 3A1.2(c)(1) and when considering the 18 U.S.C. § 3553(a) factors in determining his

---

[5] The district court initially sentenced Young to two consecutive sentences, but subsequently dismissed the second count and accompanying sentence in an amended judgement after finding upon the government's motion that the sentences were required to run concurrently.

sentence.    The government responds that the district court adequately considered Young's mental illness at each stage of sentencing and that both the guideline range and subsequent sentence were appropriate given the nature of Young's crimes.  We agree with the government on both issues and accordingly affirm.[6]

> A. *The district court did not err in assessing the six-point enhancement for assaulting a law enforcement officer*

Young challenges the six-point enhancement imposed under § 3A1.2(c)(1), arguing the Sentencing Guidelines required the district court to consider his mental state at the time of the offense. He contends the psychiatric evaluation he underwent was limited to determining his competency to stand trial.  Thus, Young argues, the court wrongly relied on the psychiatric evaluation's malingering finding to establish his knowledge of the officers' identity because that finding was related to comments he made during interviews that took place more than nine months after the incident, when he was properly medicated and in his right mind. We disagree and affirm the judgment of the district court.

Young's knowledge at the time of the shooting is a question of fact, and we review questions of fact for clear error only.  *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021).  The district

---

[6] As a preliminary matter, we note that Young's brief fails to argue that the cross-reference to the second-degree murder guideline in § 2A2.1(a)(2) was applied in error, and as such his objection to the application of the cross-reference has been abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–83 (11th Cir. 2014).

court determined that Young knew or should have known the identity of the officers that he shot at. Because we review for clear error, we will not disturb that determination if it is plausible in light of the entire record. *Id.*

The guideline in question, U.S.S.G. § 3A1.2(c), provides that "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom," the defendant receives a six-level increase in his offense level. U.S.S.G. § 3A1.2(c)(1). Young does not contest that he fired upon the officers in the "immediate flight" following the shooting inside his mother's home, nor that firing armor-piercing rounds risked "serious bodily injury." *Id.* Instead, Young only contests whether he had the requisite mental intent either to commit assault or "know" or have "reasonable cause to believe" that he was firing on police officers.

Ample evidence supported the district court's determination that Young knew the identity of the officers. First, the district court credited the malingering finding, which included an admission by Young that he knew the officers responding to the scene were "police." While Young argues it is important to remember "that that the evaluation took place more than nine months after the offense," and that this malingering finding was from interviews designed to evaluate competency, the original purpose and timing of the evaluation is irrelevant to the permissibility of its use at the

sentencing stage. *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir.1999) ("A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable.")

Instead, relevance and reliability are the only limitations on the district court's use of evidence at the sentencing stage, and Dr. Millers' analysis passes on both accounts. *Id*. Young does not challenge the reliability of Dr. Millers' expert methodology, which Young himself consented to. Neither does he challenge the fact that his admissions would be highly relevant to evaluating his knowledge at the time of the incident. Further, while Young may argue that his mental state at the time of the evaluation differed substantially from his mental state at the time of the crime, this does not preclude the district court from crediting Young's statements about his own mental awareness at the time of the crime. The district court was therefore free to both rely upon and credit Young's disclosure to Dr. Miller that he did recognize the officers responding to the scene as police, even though he previously described the officers as robots, the Illuminati, and demons.

In addition to Dr. Miller's evaluation, Officer Manuel and Investigator House testified at sentencing they did not believe Young experienced any sort of manic episode the day of the shooting based on their interactions. Officer Green likewise testified that the police arrived in marked cars with flashing lights,

and that Young made clear his awareness of the police and intention to evade capture when he stated after shooting Young "[g]et in jail, get in prison, it's all the same." Taken together, these testimonies provide reliable and consistent evidence, such that it is clear the district court did not err in determining Young had the requisite "knowledge" and intent to commit assault against police officers. *See Matthews*, 3 F.4th at 1289.

Citing *Robinson v. California*, 370 U.S. 660, 666 (1962), Young alternatively argues the district court's ruling criminalizes his mental illness in violation of the Eighth Amendment. This argument is also unavailing. *Robinson* held that California could not criminalize the status of being an addict to narcotics. *Robinson*, 370 U.S. at 665. However, in *Robinson* the Court clarified it would have ruled differently if California instead criminalized the "use of narcotics, for their purchase, sale, or possession, or for antisocial or disorderly behavior resulting from their administration," regardless of any underlying addiction. *Id.* at 666. Further, the Supreme Court has clarified regarding *Robinson* that where laws "do not criminalize mere status, *Robinson* is not implicated." *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 547 (2024). Young was not punished for his status as a person experiencing mental illness; rather, he was punished for his act of firing upon the officers with, at a minimum, callous disregard for their safety. Such acts, even if committed as result of mental distress, can be constitutionally criminalized. *Cf. id.* at 546-547; *Robinson*, 370 U.S. at 666.

Here, the district court did not clearly err in applying the six-level enhancement under § 3A1.2(c)(1) because the record supported its finding that Young knew or had reasonable cause to believe that he was assaulting law enforcement officers.

### B. *Young's sentence was substantively reasonable*

Young also argues the district court "violate[d] the language and the policies behind the Sentencing Statutes enacted by Congress." In particular, he argues that by inadequately considering Young's mental health, the district court failed to ensure the sentence is sufficient but not greater than necessary as required by 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(D). We again disagree and affirm the district court.

When reviewing a sentence for substantive reasonableness, we apply a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Under the abuse-of-discretion standard, we will only vacate the defendant's sentence if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotation omitted).[7]

---

[7] The § 3553(a) factors that the district court must consider include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to

A district court abuses its discretion and imposes a substantively unreasonable sentence only when it (1) fails to consider relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *Id.* at 1189. Although there is no automatic presumption that a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the guidelines range to be reasonable. *United States v. Foster*, 878 F.3d 1297, 1309 (11th Cir. 2018) (citations omitted).

Here, the district court did not abuse its discretion in sentencing Young to the statutory maximum of 120 months' imprisonment. As an initial matter, the sentence is within the guideline range. While being inside the guideline range is not on its own dispositive, a sentence within the range is ordinarily expected to be reasonable. *See id.* Further, the district court adequately explained why it found the facts of the case warranted a sentence that aligned with the Guidelines and did not merit a downward variance. The court emphasized the dangerousness of the situation, and how fortunate it was that there were no casualties. Both of these considerations are reasonable facts that may justify a ten-year sentence.

---

afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(D).

Further, despite Young's assertion that the court did not consider his mental illness at the time of his offense, the district court dedicated a significant amount of the sentencing hearing to evidence on this very topic. The district court heard extensive testimony from multiple law enforcement witnesses involved in the incident who testified they did not either that believe Young was suffering from mental illness, or that he could not appreciate that they were law enforcement when he shot at them. And while the district court's oral pronouncement of the sentence focused on the dangerousness of Young's actions in explanation for its sentence, the record further confirms the court also considered Young's history of mental illness when it recommended to the Bureau of Prisons that Young participate in residential, comprehensive, substance abuse treatment and mental health treatment while incarcerated in its written judgement.

Young has not carried his burden to show that the district court abused its discretion in weighing the § 3553(a) factors and arriving at an unreasonable sentence. *Irey*, 612 F.3d at 1190; *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) ("The party challenging the sentence bears the burden of showing that it is unreasonable."). Young's sentence is substantively reasonable because the district court did consider his history of mental illness and ultimately determined that a ten-year sentence was appropriate given the grave injuries Young both caused and risked in the commission of his offense. We find no error in the district court's reasoning and affirm.

**AFFIRMED.**