[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12539

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GARY LEET HORN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:14-cr-00177-TFM-N-1

_____

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Gary Horn appeals the district court's judgment revoking his supervised release and imposing a new sentence of imprisonment and supervised release.  We affirm.

## I.

In 2014, Horn pleaded guilty in the Southern District of Alabama to possession of a firearm in furtherance of a drug trafficking crime.  Horn was driving a moped with a handgun in his waistband and a female passenger behind him was wearing a backpack containing a kilogram of drugs Horn admitted was his. Horn was sentenced to five years' imprisonment and five years' supervised release, which began in August 2020.

In June 2021, Horn's probation officer recommended the district court revoke supervised release due to three alleged violations:  (1) leaving the judicial district without authorization, (2) associating with people engaged in crime, and (3) committing new crimes—most seriously, methamphetamine possession.  At his revocation hearing, Horn admitted leaving the district without authorization but denied the other violations.  In response, the government called the probation officer who testified that he'd smelled marijuana while visiting Horn's home, and Horn had twice tested positive for the drug.

The government also called a Georgia sheriff's deputy. The deputy testified that he pulled over a speeding car—in which Horn was the front passenger—that was traveling southbound on I-85. As the deputy approached the car, he noticed the back seat passenger, Tyrone Simmons, moving significantly. The deputy smelled marijuana while explaining to the driver, Horn's girlfriend and roommate, why he'd stopped her. The deputy then searched the car. He found two liquid-filled and dropper-topped glass bottles, one in the front center console and the other visibly "exposed" "in front of the center console . . . where the cup holders would be." All three car occupants denied knowing what was in the bottles. Mr. Simmons eventually offered that it could be or was liquor. The liquid field-tested positive for methamphetamine and in total weighed approximately 113 grams.

On the back seat floorboard, the deputy found a fanny pack containing two loaded guns—one stolen—and $10,000 cash. Mr. Simmons claimed ownership of the pack and its contents. Horn and the others were arrested and charged with trafficking methamphetamine, which under Georgia law is established when a person possesses twenty-eight grams or more of the drug. *See* Ga. Code Ann. § 16-13-31(e).

The district court found Horn had been returning to Alabama from an Atlanta drug trafficking trip and found all alleged supervision violations committed. The district court revoked Horn's supervision and sentenced him to thirty months' imprisonment followed by thirty months' supervised release. The district court

justified this sentence, in part, on the fact that Horn jointly and constructively possessed the drugs and guns in the car. The district court further explained that Horn had a prior state drug conviction, which along with his "previous participation in the drug trade" helped establish the supervision "violation and the attendant punishment."

## II.

Horn advances three arguments on appeal. First, he contends there was insufficient evidence that he violated his supervised release conditions. Second, he asserts his sentence is procedurally unreasonable because the district court clearly erred in finding he possessed the guns. Third, Horn maintains the district court infringed his due process rights by relying on his criminal history to find supervision violations and in determining his sentence.

## A.

We begin with whether there was sufficient evidence to find Horn violated his supervision conditions. A district court may revoke a defendant's supervised release term if it "finds by a preponderance of the evidence that the defendant violated a condition of [his] supervised release." 18 U.S.C. § 3583(e)(3). A preponderance of the evidence "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (quotation omitted). Absent clear error, a district court's factual findings during revocation proceedings are binding. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

Horn hasn't shown the district court clearly erred in finding by a preponderance of the evidence that he jointly and constructively possessed methamphetamine. Horn wasn't a mere passenger in a car that unbeknownst to him contained drugs. *Cf. United States v. Stanley*, 24 F.3d 1314, 1320 (11th Cir. 1994) ("[A]ll of the circuits, including this one, require something more than mere presence [of drugs] in the car . . . ."). Rather, the circumstantial evidence sufficiently establishes that he at least had joint knowledge of and joint control over the distribution amount of methamphetamine in the vehicle. *See United States v. Knight*, 705 F.2d 432, 433 (11th Cir. 1983) ("Constructive possession consists of the knowing exercise of or the knowing power or right to exercise dominion and control over the substance. Constructive possession need not be exclusive but may be shared by others." (citations omitted)); *United States v. Faust*, 456 F.3d 1342, 1345–46 (11th Cir. 2006) ("Constructive possession can be established by either direct or circumstantial evidence and by inferences arising from the surrounding circumstances.").

The methamphetamine bottles were in Horn's plain view, located a few inches next to the front passenger seat where he was sitting, as his girlfriend drove them back from Atlanta to Alabama. *See United States v. Wilson*, 183 F.3d 1291, 1300 (11th Cir. 1999) (finding the defendant constructively possessed drugs because, among other things, they were "in plain view" and "directly beside him in the vehicle"); *Harris v. Blackburn*, 646 F.2d 904, 906 (5th Cir. Unit A Apr. 1981) (indicating that "prior dealings" or "a relationship

6                    Opinion of the Court                21-12539

between" a car's driver and front seat passenger may establish "an inference" the passenger "had control over" drugs in the center console); *United States v. Ferg*, 504 F.2d 914, 917 (5th Cir. 1974) (suggesting that a defendant who traveled with others in a car containing drugs "for a sustained period of time" more likely to be found in joint and constructive possession). Horn's assertion that the methamphetamine bottles were in Mr. Simmons's sole possession is refuted by their location. The bottles were in the front, where Horn was sitting. Mr. Simmons was in the back. *See Wilson*, 183 F.3d at 1300 (finding drugs wedged "between the passenger seat and the passenger side door" were "in fact, more under the dominion of" the defendant in the passenger seat than the driver "given their respective positions in the vehicle"). We're unpersuaded by Horn's insistence that Mr. Simmons's comment that the bottles contained liquor evinces sole possession—especially because, unlike the firearms and cash, Mr. Simmons never admitted owning the bottles. In sum, sufficient evidence supports the district court's finding that Horn violated his supervised release by possessing methamphetamine.[1]

---

[1] Horn's meth possession is a Grade A violation, the most serious grade. Thus, we don't need to determine whether the district court clearly erred in finding Horn committed any other supervision violation. *See* U.S.S.G. § 7B1.1 ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.") Even if those findings were clearly erroneous, they'd be harmless. *See United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th. 2014) ("[W]here

## B.

We turn next to whether Horn's sentence was made procedurally unreasonable by the district court's finding that he possessed firearms. We review the reasonableness of a district court's revocation sentence for abuse of discretion. *See United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). A sentence may be procedurally unreasonable if a district court selects "a sentence based on clearly erroneous facts." *Id.* at 936.

The district court's finding that Horn jointly and constructively possessed the guns wasn't clearly erroneous. As with drugs, mere proximity to guns doesn't establish constructive possession. *See United States v. Ochoa*, 941 F.3d 1074, 1104 (11th Cir. 2019). Rather, "to establish constructive possession, the government [must] prove, through direct or circumstantial evidence, that the defendant was aware or knew of the firearm's presence and had the ability and intent to later exercise dominion and control over the firearm." *Id.* A gun need not be physically near a defendant, and constructive possession may still be established when a gun is physically held by another person. *United States v. Perez*, 661 F.3d 568, 576–77 (11th Cir. 2011). "[A] defendant's knowing participation in a joint criminal venture in which a particular firearm is intended to

the district court's decision to revoke a defendant's supervised release is supported adequately by one alleged violation, a possible error in consideration of other allegations is harmless.").

play a central part permits the [factfinder] to reasonably conclude that the defendant constructively possessed that gun." *Id.* at 576.

Here, despite Mr. Simmons's ownership claim, it was within the district court's discretion to find Horn in joint and constructive possession of the guns. First, there's evidence suggesting the guns might've been elsewhere in the car prior to the traffic stop. As the deputy approached, he observed Mr. Simmons "moving around a good bit." These furtive movements could indicate Mr. Simmons had taken the guns from another place in the car in an attempt to hide them in the back seat fanny pack.

Second, and more important, the evidence established a joint criminal venture to traffic methamphetamine in which the guns were intended to play a central role. It was reasonable for the district court to find Horn jointly and constructively possessed the guns because the totality of the evidence shows he knowingly participated in an armed drug-trafficking trip: Horn and his companions were returning from an interstate trip with distribution amounts of methamphetamine, $10,000 cash, and loaded guns—one stolen. Our precedent explains that large sums of cash may indicate drug trafficking. *See United States v. Thomas*, 242 F.3d 1028, 1032 n.5 (11th Cir. 2001). We've also "recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Cruz,* 805 F.2d 1464, 1474 (11th Cir. 1986); *see also United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995) ("Guns . . . go hand-in-hand with illegal drug operations."); *United States*

v. Lopez, 649 F.3d 1222, 1242 (11th Cir. 2011) ("[A]s Forrest Gump might say, drugs and guns go together like peas and carrots.").

Horn himself effectively acknowledged this connection during his underlying conviction proceedings for possession of a firearm in furtherance of a drug trafficking crime. He "admitted that he obtained the handgun . . . to defend himself and his product." Our precedent "establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time." United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003).

Horn tries to distinguish his underlying conviction's facts from the facts here. He stresses that the underlying conviction featured him in physical and actual possession of a gun, as opposed to here where the guns were found in the back seat fanny pack. But Horn's underlying conviction also featured him in constructive possession of contraband in a vehicle passenger's bag. There, Horn was driving a moped, and his passenger was wearing a backpack containing a kilogram of drugs Horn admitted was his. In short, ample evidence supports the district court's finding that Horn possessed the guns.

## C.

Horn finally argues that the district court violated his due process rights by using his criminal history as propensity evidence. Because Horn didn't object to this alleged constitutional error before the district court, we review for plain error. See United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005). "An error is plain if

it is clear or obvious—that is, if the explicit language of a statute or rule or precedent from the Supreme Court or this Court directly resolves the issue." *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020) (cleaned up).

Horn hasn't shown the district court plainly erred in its consideration of his prior bad acts because he hasn't established this violated any statute, rule, or binding precedent. Horn concedes the Federal Rules of Evidence don't apply in supervised release revocation proceedings, meaning he can't avail himself of Rule 404(b)'s propensity evidence ban. *See United States v. Frazier*, 26 F.3d 110, 111 (11th Cir. 1994) ("[T]he Federal Rules of Evidence do not apply in supervised release revocation proceedings.") Nonetheless, Horn stresses that defendants facing revocation are owed certain minimal due process protections—which he insists includes prohibition of propensity evidence.

"Defendants involved in revocation proceedings are entitled to certain minimal due process requirements," *id.* at 114, but fatal to Horn's argument is his failure to provide explicit language from the Supreme Court or this court supporting his assertion that minimal due process in this context includes a propensity evidence ban. He offers no authority whatsoever from this court, and the two Supreme Court cases he advances neither expressly nor directly support his position. The language he highlights from *Michelson v. United States*, 335 U.S. 469, 475 (1948), merely emphasizes that the common-law tradition bars propensity evidence. And the other Supreme Court case Horn cites, *Spencer v. Texas*, 385 U.S.

554 (1967), undermines his argument. There, the Supreme Court was asked directly to hold that "the Due Process Clause . . . requires the exclusion of prejudicial evidence of prior convictions." *Id.* at 563. It didn't do so. *See id.* at 563–69. The first part of the sentence Horn quotes from *Spencer* notes as much: "this Court has never held that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause." *Id.* at 573–74 (Warren, C.J. concurring in part and dissenting in part).

In lieu of the binding authority he needs to establish that any error by the district court was "plain," Horn reaches outside our circuit and invokes *United States v. Perez*, 526 F.3d 543 (9th Cir. 2008). But an error cannot be plain based on caselaw from outside the circuit. *See Innocent*, 977 F.3d at 1081. Even if it could, *Perez* doesn't directly resolve our issue. *Perez* found a district court erred by finding a supervised release violation based "*solely* on prior bad acts . . . instead of evidence." 526 F.3d at 550 (emphasis added). The Ninth Circuit expressly limited its holding in *Perez*, explaining "this is an unusual case with unusual facts and should not be taken out of context. . . . This is not a case where other evidence was offered in support of revocation, such as illegal drugs discovered in the possession of the releasee." *Id.* at 545. In contrast, here, the district court didn't find Horn violated his release conditions based solely on prior bad acts. The district court's statement Horn alleges is plain error demonstrates this:

I think under the totality of the circumstances that
Mr. Horn was in possession of the firearms and the
drugs in the car.

*In addition,* Mr. Horn has a previous, I believe,
possession of marijuana in either the first or second
degree, but I think first degree, which shows in his
presentence report. *That coupled* with the officer vis-
iting his home where he smells odor of marijuana, his
previous participation in the drug trade—*all of those
things taken together*, I think, suffice to establish the
violation and the attendant punishment.

This partial reliance on Horn's criminal history and prior
bad acts to find a supervised release violation isn't plain error. Nor
did the district court err by relying on Horn's criminal history as a
basis for the revocation sentence itself because that was statutorily
required. *See United States v. Moore*, 443 F.3d 790, 794 (11th Cir.
2006) ("18 U.S.C. [section] 3583 directs the court to consider vari-
ous factors in sentencing the defendant upon revocation of super-
vised release, including the history and characteristics of the de-
fendant . . . ."). Because the district court did not plainly err by con-
sidering Horn's past drug trafficking, there is no basis to reverse his
sentence for violating his supervised release.

**AFFIRMED**.